KATHERINE SCHAFFENACKER, Appellee, *vs.* ANNA BAR- BARA BEIL, *et al.*—(WILLIAM SCHAFFENACKER *et al.* Appellants.)

*Opinion filed December 16, 1925—Rehearing denied Feb. 9, 1926.*

1. WILLS—*effect of provision in lieu of dower.* A provision in a will that a devise to the testator's wife shall be in lieu of dower, homestead, widow's award and all other demands that the wife may have against the estate, is, in fact and in legal effect, a mere offer by the testator to purchase the widow's legal rights for the benefit of his estate.

2. SAME—*renunciation under section 12 of Dower act must be made within time specified.* Under the provisions of section 12 of the Dower act the election and renunciation must be made within the time specified, and if a widow makes no renunciation and elec- tion within such time she is compelled to take under the will.

3. SAME—*when acceptance of rent is not an election to take un- der will—burden of proof.* Acceptance of rent is not an election to accept the provision of a will giving a widow a life estate, where she would have been entitled to such rent under her re- nunciation under section 12 of the Dower act, and the burden is on parties seeking to defeat a renunciation under the statute to prove that she accepted the rent under that provision of the will and that at the time she accepted it she was in a position to make a binding election.

4. SAME—*when heirs are not entitled to rent—dower.* The rule that the heirs are entitled to rent until dower is assigned has no application where the widow renounces the will under section 12 of the Dower act, because the interest that the widow takes under her renunciation is not a dower interest but is in lieu of dower.

5. SAME—*when remainder is contingent until death of life ten- ant—partition.* Where a testator gives his wife a life estate in all

his real property, with remainder to his brothers and sisters on condition that they be living at the death of his widow, the share of any deceased brother or sister going to his or her lineal descendants who survive the widow, the remainder is contingent until the death of the widow notwithstanding she renounces the will under section 12 of the Dower act, and the shares of the contingent devisees cannot be partitioned until it is known who will take and in what proportion.

6. SAME—*renunciation of particular estate does not accelerate remainder.* Where a widow, under section 12 of the Dower act, renounces a life estate given her by the will of her deceased husband, a contingent remainder limited thereafter is not accelerated where the contingency is due to the uncertainty of the persons to take the remainder; and the renunciation does not have the effect of destroying the life estate but it will pass under the will with the legacies and bequests, equalized under section 79 of the Administration act.

7. SAME—*contingent devisees must survive life tenant rather than life estate.* Where contingent interests depend upon the devisees surviving a life tenant, the persons named as devisees must literally survive the person named as life tenant, and it is not enough that they merely survive the determination of the life estate.

8. SAME—*trustee should be appointed to administer life estate renounced by widow.* Where a devise of a life estate in all the testator's property is renounced by the widow under section 12 of the Dower act and the remainder is contingent, the life estate should be sequestered and continued in force, to be managed by a trustee selected by the court during the life of the widow, with directions to rent the real estate and invest the rent, or the proceeds if the real estate be sold, so that the proceeds, with accumulations, may be paid to the devisees and legatees under the will, and the life estate does not pass to the personal representatives as an estate *pur autre vie.*

9. SAME—*an estate pur autre vie is created by some instrument.* An estate *pur autre vie* is one that is in every instance created by deed or by will or brought into existence by reason of the provisions of a will, deed or other instrument.

10. SAME—*widow's half acquired by renunciation is subject to homestead.* Where a widow acquires one-half of her deceased husband's estate by renunciation of the will under the statute, if there is a homestead estate in the lands the widow's undivided half in fee should be encumbered or burdened with half of the homestead estate, and in case the homestead cannot be actually assigned to the widow and a sale is necessary, the proceeds due contingent devisees should be sequestered and invested for their benefit.

11. SAME—*how widow's half acquired by renunciation is to be set off.* A widow's undivided half in fee, acquired by renunciation of the will under the statute, may be set off to her as a whole, and the commissioners are not necessarily required to include in that body of land any particular tract.

APPEAL from the Circuit Court of Logan county; the Hon. FRANK LINDLEY, Judge, presiding.

HOMER B. HARRIS, and HERRICK & HERRICK, for appellants.

CHARLES J. GEHLBACH, and COVEY & WOODS, for appellee.

HAROLD F. TRAPP, guardian *ad litem,* for infant defendants.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Louis J. Schaffenacker died testate on March 19, 1921. He left surviving him Katherine Schaffenacker, his widow, and no child or children or descendants of a deceased child or children. He left surviving him his brothers and sisters, Anna B. Beil, Mary Seyfer, Emma Stoll, Carrie Ahrens, Olga Haering, Fred Schaffenacker, William Schaffenacker and Edward Schaffenacker; also Albert Feuerbacher and Clarence Feuerbacher, the children of his deceased sister Katherine Feuerbacher, and Edward Buehler and Frances C. Buehler, the children of his deceased sister Sarah Buehler. The brothers and sisters who survived the testator had children living at the time of his death and some of those children had children living at that time. All of the brothers and sisters and the children of the deceased sisters are adults, but some of the children of the surviving brothers and sisters are minors, as are also some of the children of those children.

The first clause of the testator's will provided that all of his just debts and funeral expenses be paid. The second

320—3

clause bequeathed and devised to his wife, Katherine, all that remained of his real, personal and mixed property, to have and to hold for her natural life. The third clause provided that the foregoing should be in lieu of dower, homestead, widow's award and all other demands that his wife might have against his estate. The fourth clause was as follows: "Subject to the foregoing, I give, bequeath and devise all property devised to my wife for life, after her death, to all the brothers and sisters I may leave living at the death of my said wife, to-wit, [naming his ten brothers and sisters aforesaid, including the deceased sisters, Katherine Feuerbacher and Sarah Buehler,] or the survivors of them, share and share alike: *Provided,* that if any of said brothers and sisters die prior to the death of my wife, leaving lineal descendants or a lineal descendant living at the death of my said wife, such lineal descendant or descendants shall inherit the share of his or her parent (the same as if such parent had been living at the death of my wife) *per stirpes* in fee: *Provided further,* Carl Schaffenacker, son of Fred G. Schaffenacker, shall take nothing hereunder." By the fifth clause he nominated William Schaffenacker, his brother, to be executor of his will and to act without bond, who duly qualified as such executor. The will was admitted to probate on April 9, 1921. On September 17, 1921, the widow filed her written renunciation of the will and her election to take under section 12 of the Dower act.

The testator died seized of about 250 acres of farm land in Logan county, his home property in Lincoln, on which he resided with his wife at the time of his death, and a lot in the Chautauqua grounds in Lincoln. The bill of appraisement filed in the case discloses that the testator's personal property was of the value of $16,488.25, and was more than sufficient to pay all his debts and funeral expenses. The widow's award was fixed at $2500, and the widow selected the articles listed in the appraisement bill

that she desired to take in lieu of her award. At the testator's death one Buehler was a tenant on the farm lands.

On August 9, 1922, the widow, Katherine Schaffenacker, filed her bill in the circuit court of Logan county against the aforesaid brothers and sisters and the descendants of brothers and sisters of her deceased husband, and the tenant, praying for a partition of the lands owned by her husband at his death, and that the court decree that by her renunciation of her husband's will she took a homestead estate and an undivided one-half interest in fee simple in all the real estate of which her husband died seized. All of the adult defendants except the children of the surviving brothers and sisters answered the bill, admitting, in substance, the main allegations of the bill but denying the widow's right to partition, alleging that her renunciation was of no effect because she had by her conduct made an equitable election to take under the will and had accepted benefits thereunder as a life tenant. The minor defendants answered by guardian *ad litem.* Replications were filed to the answers. The defendants who failed to answer, including the tenant, except the minors, were defaulted and a decree *pro confesso* was entered as to them. The cause was referred to a master in chancery to take the proofs. After the filing of the bill and after the reference to the master, a son of George Seyfer and a daughter of Edward Buehler were born and were made parties by a supplemental bill, and a guardian *ad litem* answered the bill for them. Upon a hearing before the court additional evidence was heard on the supplemental bill, and the evidence taken by the master was also introduced before the court.

The court entered its decree, finding that the widow by her renunciation of the will and election was entitled to a homestead estate of the value of $1000 in the home property and an undivided one-half part of the remainder thereof in fee simple and to an undivided one-half of all the remainder of the premises in fee simple absolute. The court

further found that by said renunciation and election no acceleration of the remainder after the life estate was thereby effected, because it was specifically provided that the time of the vesting of the remainder should be at the death of the widow, and that it was intended by the will that the persons to take the remainder should be, and could only be, determined at the death of the widow and that no remainder could vest before that time. The court also found that the widow was entitled to one-half of all the rents received from all of the real estate, after deducting the sum of $838.12 already paid to her. The court then specifically decreed that the widow is entitled to a homestead in the residence property of the value of $1000, and that she is also the owner in fee simple of an undivided one-half of the remainder of the residence property and of all the other real estate described in the bill, and that the fee simple title to the other undivided half of all of said real estate, subject to the estate of homestead, shall at the time of the death of the widow vest in the brothers and sisters and the children of his deceased sisters, if they shall be living, and if not then living, to the survivors or descendants, as provided by the will, and that Carl Schaffenacker, son of Fred G. Schaffenacker, shall take nothing whatever in said real estate. The court further found and decreed that during the life of the widow an estate *pur autre vie* in and to the one-half of the real estate that is to vest after the death of the widow, subject to the homestead estate, "shall pass to the personal representatives of Louis J. Schaffenacker, deceased." The court by its decree appointed commissioners to make partition, and specifically directed them, after being duly sworn, to go upon the premises and first assign to the widow the homestead as in the decree ordered, and then assign to her one-half of all of the remainder of said premises in fee simple, and the other one-half in fee simple, subject to the homestead, to the defendants, Anna B. Beil, Albert Feuerbacher, Clarence Feuerbacher, Mary Seyfer, Edward A.

Buehler, Frances C. Buehler, Emma Stoll, Carrie Ahrens, Olga Haering, Fred G. Schaffenacker, William Schaffenacker and Edward Schaffenacker, under the terms and conditions of the last will and testament of the testator.

The brothers and sisters who survived the testator and the children of his deceased sisters prayed a joint and several appeal from the decree, but only William and Fred G. Schaffenacker, brothers of the testator, have perfected their appeal. The guardian *ad litem* has assigned cross-errors on the record.

The first contention made by appellants is that appellee's statutory renunciation and election were superseded by an election to take under the will, and was therefore of no effect because she accepted the $836.62 as the rent portion of the crops sold by the tenant, and which they contend she accepted, under the provisions of the will, as owner of the life estate in the premises. They predicate this contention on the doctrine of equitable election, and contend that by such election she was estopped from making thereafter a statutory renunciation and election. The facts on which they base this contention are, that about the first of August, 1921, (a month or more before her renunciation and election were made,) the widow had a conversation with the tenant in regard to the rent-part of the wheat that had been threshed and placed in an elevator operated by the executor of the estate. The widow complained to the tenant that she had not received a check for the rent-part of the wheat. She stated to him that she always got a check promptly from the other tenants as soon as the wheat was threshed and sold. The tenant reported this conversation to the executor, who immediately computed the amount of the rent ($836.62) and sent the check for that amount to appellee. She cashed the check and kept the money about one week after the wheat had been received by the executor. The rent portion for the other crops for 1921, and for the crops since that time, has been held by the executor pur-

suant to a stipulation between the parties to this suit. The above sum is all that appellee has received as rent for the premises.

The doctrine of equitable election is not applicable to this case. The will provided that the provision made for the widow should be in lieu of dower, homestead, widow's award and all other demands she might have against the testator's estate. The provision in lieu of dower, etc., was, in fact and in legal effect, a mere offer by the testator to purchase the widow's legal rights for the benefit of his estate. (*Blatchford* v. *Newberry,* 99 Ill. 11.) The widow declined to accept this offer and filed her written renunciation and election in the probate court under section 12 of the Dower act. That section provides that "if a husband or wife die testate, leaving no child or descendants of a child, the surviving husband or wife may, if he or she elect, have, in lieu of dower in the estate of which the deceased husband or wife died seized, * * * and of any share of the personal estate which he or she may be entitled to take with such dower, absolutely, and in his or her own right, one-half of all the real and personal estate which shall remain after the payment of all just debts and claims against the estate of the deceased husband or wife." It further provides that such election may be made whether dower has been assigned or not, at any time before or within two months after notification to the survivor of the payment of debts and claims, and not afterwards. Under the provisions of this section the election and renunciation must be made within the time specified, and if the widow makes no renunciation and election within such time she is compelled to take under the will and not under this section. Under the third provision of section 1 of the Statute of Descent, the widow in this case would have been entitled to one-half of the real estate and dower in the other half and the whole of the personal estate, if her husband had died intestate. The widow did not make a binding election to take under

the will, because it is not shown that she received the rent in question as a life tenant. Under the evidence the acceptance of the rent by her may as well be deemed an acceptance of the rent under her renunciation and election, as by such renunciation and election she was entitled to one-half of the rents of all the rented premises and in addition thereto one-half of all personal property after the payment of debts and her award. The burden of proof that the widow accepted the rents under the provisions of the will is upon appellants, and they have failed by their proof to establish that fact. They have also failed to show that at the time she received that rent she was in a position to make a binding election, with notice of the payment of debts and claims, etc.

The rule that the heirs are entitled to the rent until dower is assigned has no application in this case, because the interest that the widow took under her renunciation and election was not a dower interest, but was in lieu of dower, etc.

By the fourth paragraph of his will the testator devised his entire estate, subject to the widow's life estate, to his ten brothers and sisters on condition that they be living at the death of his widow, and if any of such brothers and sisters should die before the death of the widow, leaving a lineal descendant or descendants at the death of the widow, then such lineal descendant or descendants would take the share of their deceased parent *per stirpes,* in fee, with the further provision that Carl Schaffenacker should take nothing. The remainder under the provisions of the will is contingent, as it cannot be determined who will take the remainder until the death of the widow. *Hill* v. *Hill,* 264 Ill. 219; *Spatz* v. *Paulus,* 285 id. 82; *Jones* v. *Miller,* 283 id. 348.

Appellants contend that by the relinquishment of the widow the life estate was extinguished, and the remainders were thereby accelerated to take effect immediately in the living brothers and sisters and the lineal descendants of

the deceased brothers and sisters, because there is no particular estate to support the contingent remainder. The life estate was not extinguished and the remainders were not accelerated so as to immediately vest in those who are to take under the will. The rule is general and well recognized that in the case of a contingent remainder, where it is dubious and uncertain as to what persons will be entitled to take the remainder, there can be no acceleration or vesting of the remainder by a renunciation of the particular estate by which the remainder is supported. (21 Corpus Juris, 995; Kales on Estates and Future Interests, (2d ed.) sec. 599; 23 R. C. L. 559; *Blatchford* v. *Newberry, supra.*) It is also the settled rule concerning the construction of wills by which are devised contingent interests depending upon the devisees surviving the life tenant, that the persons named as devisees must literally survive the person named as life tenant and not that they merely survive the determination of the life estate. (*Hasemeier* v. *Welke,* 309 Ill. 460.) The renunciation by the widow of the life estate devised to her did not destroy the life estate or any part thereof, but under section 79 of the Administration act the legacies and bequests are to be equalized, and the life estate not taken by the widow passes by the will. (*Wakefield* v. *Wakefield,* 256 Ill. 296; *Fowler* v. *Samuel,* 257 id. 30.) The rule in equity in such cases is that the court will take hold of the estate which is relinquished, to compensate, as far as possible, the disappointed devisees and sequester the devise or bequest renounced and apply it in the place of the devises and bequests defeated. That is what the court should have done in this case. The life estate should have been sequestered and continued in force, to be managed by a trustee selected by the court during the life of the widow, under direction to rent the real estate to the best advantage in case the same be not sold, or in case the same be sold, that the proceeds thereof be invested to the best advantage during the life of the widow, so that such proceeds, with

the accumulations, after the payment of necessary expenses, may be paid to the devisees and legatees in such proportions as it shall then be determined they are entitled to take under the will.  *Wakefield* v. *Wakefield, supra.*

The guardian *ad litem* contends that the life estate relinquished by the widow was an estate *pur autre vie.*  He also contends that it was a freehold estate and descended to the heirs-at-law of the testator as special occupants.  He admits, however, that if the decision of this court in the case of *Bullard* v. *Suedmeier,* 291 Ill. 400, is to be followed it would pass to the personal representative as personal property.  His further insistence is that that decision is unsound and should not be followed.  That decision has no application whatever to this case.  The will in this case created no estate *pur autre vie.*  The estate referred to as an estate *pur autre vie* is simply the life estate created by the will, which continues in force as already explained, and must be dealt with as already explained.  It cannot possibly pass to the personal representatives of the deceased.  The court's decision is correct in the main, but it erred in holding that the widow's life estate is an estate *pur autre vie.*  An estate *pur autre vie* is one that is in every instance created by deed or by will, or brought into existence by reason of the provisions of a will or deed or other instrument under consideration.

In this case the widow is entitled to an estate of homestead of the value of $1000 in the residence property, and also to her award in the personal estate, in addition to her rights under section 12 of the Dower act.  Under said section the widow is entitled to an undivided one-half of the real estate in fee simple, and the other devisees who are to take will be entitled to the other undivided one-half of the real estate in fee simple at her death.  Both of these interests are alike encumbered or subject to the homestead estate, the rule being, that when the widow and heirs or devisees are each entitled to an undivided half in fee of the lands of

which the husband died seized and there was a homestead estate in said lands, the widow's undivided half in fee should be encumbered or burdened with half of the home-. stead estate. (*Catek* v. *Kropik,* 129 Ill. 509; *Olp* v. *Meyer,* 277 id. 202.) The personal estate is not involved in this case. No question is made as to the rights of the widow and the other devisees as above set forth if the widow is to take under section 12 of the Dower act and not under the will. The decree of the court in the record does not clearly and definitely declare that the widow's half of the real estate is to be subject to or encumbered by half of her homestead estate, and this has most likely occurred by reason of the fact that the decree as written does not conform to the decree in fact granted by the court. In the decree it is repeatedly stated that half of the fee interests of those who are to take at the death of the widow is subject to a homestead estate, and in no instance is the widow's one-half in the fee stated to be subject thereto or to any part thereof. The fee of the home property covered by the homestead should be divided equally between the widow and the other devisees. By the wording of the decree the widow is not definitely decreed her half of this fee, and only half of it is decreed to the other devisees. This would leave one-half of the estate actually covered by the thousand-dollar homestead not disposed of by the decree. The decree also gives the widow one-half of all the rents of the rented premises after deducting the sum of $838.12 already paid to her. The evidence shows without question, that the amount of rents received by her was $836.62. This is undoubtedly a clerical error in drafting the decree. The widow's undivided half in fee may all be set off to her in a body, and the commissioners are not necessarily required to include in that body of land any particular tract. (*Dunshee* v. *Dunshee,* 263 Ill. 188.) The record does not disclose the value of the residence property, and it may be that the homestead estate cannot be actually

assigned to the widow, and a sale of the entire residence property may for that reason be necessary and a proper division be made of the proceeds of sale, such proceeds to go to the devisees who take at the death of the widow and be sequestered by the court and invested for their benefit by the trustee during the life of the widow. Such sale of the residence property would not necessarily prevent an equal partition of the remainder of the lands between the widow and the other devisees who will take at her death. The shares of the contingent devisees cannot now be partitioned among them as found and decreed by the court, because it is not known who will take or in what portions those who take will take at the widow's death.

The decree must be affirmed except as to one error committed by the court which is already indicated, as the parties have not questioned the decree except in the particulars passed on by this decision. The foregoing suggestions are made to the parties in interest so that they may, if they desire, have all clerical errors and inaccuracies removed from the decree on application to the court for that purpose, and leave is given, if they shall be so advised on remandment of the cause, to make and be heard on such application to the court below and have the decree revised and corrected.

For the error in holding that the life estate that shall pass to the remaindermen at the widow's death is an estate *pur autre.vie* and passes to the personal representatives of the deceased, that part of the decree is reversed and in all other things it is affirmed. The cause will be remanded, with directions to modify the decree and sequester such life estate and appoint a trustee to manage the same for the use and benefit of the devisees who take at the death of the widow, in accordance with the views herein expressed.

*Reversed in part and remanded, with directions.*