James F. Kane, Administrator with Will Annexed of Estate of Joseph Steinbrecher, Deceased, Appellant v. Frank Schofield, Trustee Under Last Will and Testament of Elmer F. Sueske, Deceased, Appellee.

Gen. No. 43,826.

508

Opinion filed November 19, 1947.    Released for publication December 24, 1947.

SHEEHAN & EGAN, of Chicago, for appellant; ROY J. EGAN, of Chicago, of counsel.

HETH, LISTER & FLYNN, of Chicago, for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

The Sueske Brass & Copper Company was incorporated in March 1927, with a capital stock of $50,000. In about a month the capital stock was increased to $150,000, represented by 1,500 shares of common stock. The place of business was located at 1319 North Peoria street, Chicago. Elmer F. Sueske was a director, president and treasurer and had 1,480 shares of stock in the corporation. His sister, Caroline C. Sueske, was a director and secretary and had 10 shares. Frank Schofield, an attorney, was a director and had 10 shares of the stock. Elmer F. Sueske became ill in 1933 and on October 30, 1933 was taken to the Garfield Park Hospital in Chicago, where he died on March 6, 1934. He left surviving as his heirs and next of kin his widow, Emma M. Sueske, his mother, Ottilia Sueske, his sister Caroline C. Sueske, and his brother Walter C. Sueske. Elmer F. Sueske was 42 years of age at the time of his death. Emma M. Sueske was approximately the same age. Ottilia Sueske was 63 years of age and a widow. Caroline Sueske was 38 years of age and a spinster. Walter Sueske was 30 years of age and a bachelor. The deceased's widow has not remarried. While in the hospital during his last illness,

and on February 8, 1934, Elmer Sueske made his last will and testament. This was duly admitted to probate on April 16, 1934 and letters testamentary were issued to Frank Schofield as the executor. The will was drafted by Frank Schofield, who had been decedent's attorney for a number of years and attorney for the corporation since its organization.

In the 5th paragraph of the will, Frank Schofield is named as trustee. Sub-paragraphs (e), (f), (g) and (h) of this paragraph deal with gifts in trust of the stock of the Sueske Brass & Copper Company. This paragraph includes 12 sub-paragraphs designated (a) to (l) inclusive. By sub-paragraphs (a) and (b) the trustee is to hold, manage and care for the trust estate, with power to sell and convey any of the trust property, and to invest and reinvest the proceeds from time to time without restriction, and to continue or dispose of the testator's business. Employees of the company and decedent's brother, Walter Sueske, are the beneficiaries of small trusts created in sub-paragraphs (c) and (d). By sub-paragraph (e) the trustee is directed to set apart 750 of the shares of stock, or the proceeds realized therefrom in case of sale or liquidation of the business, and to pay the entire net income to the widow, Emma M. Sueske, during her lifetime, and upon her death to convey the corpus to her descendants, if she has any, *per stirpes,* and in the event of her death, leaving no descendants, to her lawful heirs. She was authorized to dispose, by will, of the share included in this sub-paragraph. In sub-paragraph (f) the trustee is directed to set apart 370 shares and pay the net income therefrom to Ottilia Sueske during her lifetime. After her death the income is to be paid to Caroline Sueske, and on the latter's death the corpus "shall be conveyed . . . to my beloved wife, Emma M. Sueske, or if she be deceased, to her descendants, if she has any, . . . or if she has no descendants, then to her lawful heirs."

By sub-paragraph (g) testator directed that 360 shares be set apart and the income paid to Caroline Sueske during her lifetime, with a provision like that in sub-paragraph (f) for their disposal at her death. Sub-paragraph (h) reads:

"(h) The rest, residue, and remainder of my trust estate, after setting aside the portions referred to in paragraphs (c), (d), (e), (f) and (g) hereof, shall by my trustee be transferred, assigned and paid over to my wife, Emma M. Sueske, my sister Caroline C. Sueske, and my mother Ottilia Sueske in equal shares, and for their own use and behoof forever."

On April 15, 1935, within one year from the issuance of letters testamentary, Emma M. Sueske, the widow, renounced the provisions of the will and thereby became entitled to one half of all the real and personal estate of the deceased and in addition to a homestead right in certain real estate in Lake County, Illinois. In due course Frank Schofield, as executor, delivered to himself, as trustee, the shares of stock embraced in the trust and established the trust as he believed to be in accordance with the direction of the testator. Under the will 1,480 shares of stock were bequeathed to the trustee with directions to establish three trust estates, one with 750 shares for the benefit of the widow, one with 370 shares for the benefit of his mother Ottilia, and one with 360 shares for the benefit of his sister Caroline. It is assumed that Caroline was bequeathed 10 shares less than her mother because Caroline had been given 10 shares during the lifetime of Elmer Sueske. When the widow renounced, the trustee received only 740 shares instead of 1,480 shares. The trustee set up the trust with 370 shares for the benefit of the mother Ottilia, 360 shares for the benefit of the sister Caroline and with only 10 shares under sub-paragraph (e) of the 5th clause of the will.

Ottilia and Caroline Sueske filed a complaint in the circuit court of Cook county against Frank Schofield,

as executor and trustee under the will, Emma M. Sueske, the widow, and Walter C. Sueske, decedent's brother. Therein they alleged that by reason of the widow's renunciation they became vested with the entire legal and equitable interest in and to the corpus of all of the trusts remaining in the hands of the trustee, as established by the 5th paragraph of the will, contending that because of the renunciation the purpose of the trust, which was to preserve the corpus of the estate for the widow, could not be carried out; that because the widow had renounced there was no necessity to continue the trusts, and that they should be declared the owners of the stock, together with "10 shares which remained after renunciation"; that all of the stock should pass to them under the residuary clause sub-paragraph (h); that the trust established by the 5th paragraph be terminated; and that the trustee be required to turn over to them the corpus of the trust estate. Emma M. Sueske, the widow, answering, stated that there was doubt and uncertainty relative to the rights of the parties and that the will should be construed for the protection of all concerned. She did not request the court to declare any particular construction of the will. The trustee filed a counterclaim for a construction of sub-paragraphs (c), (f), (g) and (h) of the 5th paragraph. The case was presented to the court by both plaintiffs and the trustee upon the premise that 10 shares of stock was the corpus of sub-paragraph (e), 370 shares of corpus of sub-paragraph (f) and 360 shares the corpus of sub-paragraph (g). The chancellor entered a decree finding, among other things, that "the 10 shares remaining" in the trust set aside under sub-paragraph (e) became the property of Ottilia and Caroline under sub-paragraph (h); that the 730 shares directed to be set aside under sub-paragraphs (f) and (g) passed to Ottilia and Caroline pursuant to sub-paragraph (h); directed that the trust be terminated and that an ac-

counting be made by the trustee of all monies in his possession. The trustee appealed to the Supreme Court, which transferred the case to the Appellate Court (*Sueske v. Schofield,* 372 Ill. 481). The Appellate Court filed an opinion on June 19, 1940, reversing the decree in part and holding that the "10 shares relinquished" by the widow should be held for disappointed legatees; that such shares did not pass to Ottilia and Caroline; that the shares set aside in sub-paragraphs (f) and (g) did not become the property of the mother and daughter under sub-paragraph (h); that the trust should not be terminated; and that no accounting on the part of the trustee was necessary. *Sueske v. Schofield,* 306 Ill. App. 80. The Supreme Court granted leave to appeal. In affirming the judgment of the Appellate Court (*Sueske v. Schofield,* 376 Ill. 431), the Supreme Court said (435):

"A provision in a husband's will for his wife is in legal effect an offer on his part to purchase her statutory interest in his estate for the benefit of the estate. (*Blatchford v. Newberry,* 99 Ill. 11; *ReQua v. Graham,* 187 id. 67; *Dunshee v. Dunshee,* 251 id. 405.) Renunciation by the widow is a rejection of the provisions made for her, and, in effect, they are obliterated from the will. Its remaining provisions are not destroyed but remain operative upon the property not included within the statutory share of the spouse. (*McGee v. Vandeventer,* 326 Ill. 425; *Spaulding v. Lackey,* 340 id. 572.) The rule in this State is that in the case of a contingent remainder, where it is dubious and uncertain as to what persons will be entitled to take, there can be no acceleration or vesting of the remainder by a renunciation of the particular estate by which the remainder is supported. (*Schaffenacker v. Beil,* 320 Ill. 31.) When contingent interests are devised depending on the devisees surviving the life tenant, the remaindermen must literally survive the person named as life tenant and not merely survive the determina-

tion of the life estate. (*Hasemeier v. Welke,* 309 Ill. 460; *Schaffenacker v. Beil, supra.*) Where part of the property remains after the renunciation, the estate renounced is not destroyed but, under section 79 of the Administration act (Ill. Rev. Stat. 1937, chap. 3, par. 80) is sequestered by the court to compensate disappointed legatees. (*Foreman Trust and Savings Bank v. Seelenfreund,* 329 Ill. 546; *Schaffenacker v. Beil, supra.*) Here, after the widow's renunciation by which she took 740 of the shares of stock included in paragraph (e), 10 shares remained. The disappointed legatees are the descendants or heirs of the widow. Their interests are contingent, and it is dubious and uncertain as to who will finally prove to· be the remaindermen. This will remain uncertain until Emma M. Sueske dies. Under the rules above announced, these 10 shares do not fall into the residuary estate but they must be held by the trustee during the life of the widow, the income accumulated and it, together with the corpus, must be transferred to the proper legatees at her death.

"It is argued the interests given Emma Sueske by sub-paragraphs (f) and (g) were vested remainders, and that, therefore, they fell into the residuary clause, sub-paragraph (h). The mother Ottilia, and the sister, Caroline, are given equitable life estates by the two sub-paragraphs. These are obviously not affected by the renunciation of Emma M. Sueske, whose interests in both instances, are in remainder. We have pointed out that by these sub-paragraphs, Emma, the widow, was to take the 370 and 360 shares of stock at the death of Caroline Sueske, and that if Emma did not survive Caroline, Emma's descendants, and if she had none, then her heirs, were to get these 730 shares. Emma Sueske having renounced, there is a further contingency as to who may take the 730 shares in the event Emma survives Caroline Sueske, for Emma's heirs or descendants take only in the event she pre-

deceases Caroline. Even if Emma's interests be called vested the will provides they will terminate if she does not survive Caroline. It is immaterial whether Emma's interests were vested remainders subject to be divested if she did not survive Caroline, or whether her interests were contingent remainders. In Simes Future Interests, volume 3, section 758, at page 240, it is said: 'After all, a remainder vested subject to be wholly divested differs little in substance from a contingent remainder in the alternative.' We hold that the widow's renunciation had no effect upon the interests of her descendants or heirs, and that title to the 730 shares above mentioned did not vest in Ottilia or Caroline Sueske by reason of that renunciation. (*Schaffenacker v. Beil, supra.*) We do not attempt to determine now what will become of the 730 shares if the widow, Emma, survives Ottilia and Caroline Sueske, other than to say that the trust should not, at this time, be terminated.

"Whether the power of testimentary disposition mentioned in sub-paragraph (e) is invalid, or was extinguished by the renunciation, or, as to the 10 shares, can be hereafter exercised by the widow, is wholly immaterial so far as appellants are concerned. If it is invalid or was extinguished, the contingent interests of the widow's descendants or heirs remain unaffected. On the other hand, if it can be hereafter exercised as to the 10 shares, the interests of her legatees would be substituted for the contingent interests of her descendants or heirs, and, under all of such situations, appellants would have no interest in the 10 shares."

On February 9, 1945, Joseph Steinbrecher filed a complaint in the circuit court of Cook county and an amended complaint on October 24, 1945. In these complaints he stated that Emma Sueske "has no descendants, is still in being and of the age of 50 years, and unmarried, that he is her father and only heir at law." The amended complaint prays that the trustee, named

as defendant, be required to distribute 740 shares of the brass and copper company stock received by him as trustee under the 5th paragraph of the will, so as to equalize the loss sustained by reason of the renunciation in a corresponding ratio to the several amounts of such legacies and bequests, according to the amounts or intrinsic value of each, and that the court decree that the trust estate to be established under sub-paragraph (e) has become accelerated and vested in Joseph Steinbrecher, as the remainderman, and terminated on April 15, 1935, the date of the filing of the renunciation by the widow. Defendant denied that the legacies and bequests should be equalized; denied that the assets of the trust estate to be established under sub-paragraph (e) became accelerated and vested in Joseph Steinbrecher; denied that the trust estate terminated on the date of the renunciation by the widow; and alleged that the cause of action was *res judicata*. Plaintiff denied that the cause of action was *res judicata;* stated that he was not a party to the preceding case; that the matters in issue in that case were different than the matters in issue in the second case; and that the cause of action and judgment sought in the first case are different than the cause of action and judgment sought in the second case. There were other amendments presenting the defense of the Statute of Limitations and the dispute as to the construction of the will. The chancellor entered a decree dismissing the complaint and amendments thereto for want of equity. Plaintiff prosecutes this appeal and prays that the defendant be required to set aside 185 shares of stock in the trust estate for the benefit of Ottilia Sueske, 180 shares of the stock in trust for the benefit of Caroline Sueske; that we find that 375 shares, by reason of the renunciation, became accelerated and vested in Joseph Steinbrecher on April 15, 1935, the date of the renunciation, and should be distributed to the plaintiff as administrator

with the will annexed of the estate of Joseph Steinbrecher, deceased; that the decree be reversed; and that the cause be remanded with directions to enter a decree consistent with such findings. During the pendency of the instant appeal, plaintiff filed a motion supported by an affidavit, suggesting the death of Ottilia Sueske, mother of the testator, on May 23, 1947. On November 5, 1945, Joseph Steinbrecher died and James F. Kane was appointed administrator with the will annexed of the estate of Joseph Steinbrecher, deceased, and was substituted as plaintiff. The will was admitted to probate on November 20, 1945. Therein his daughter, Emma M. Sueske, is named as a legatee. The record does not disclose the provisions of the Joseph Steinbrecher will, or to what extent Emma Sueske is a legatee.

Plaintiff's theory of the case is that the trustee should be required to distribute 740 shares of Sueske Brass & Copper Company stock received by him as trustee, so as to equalize the loss sustained by reason of the widow's renunciation, and that the corpus of the trust estate to be established under sub-paragraph (e) of the 5th paragraph of the will became accelerated in plaintiff's decedent on April 15, 1935, the date of the widow's renunciation, he being the lawful heir of Emma M. Sueske. Defendant's theory of the case is that neither Joseph Steinbrecher, during his lifetime, nor his administrator, after his death, has any cause of action herein since Joseph Steinbrecher could not be an "heir" of his daughter who is still living; that by the will of Elmer F. Sueske three life estates or annuities were created, one of 750 shares for the benefit of the widow, one of 370 shares for the benefit of his mother and one of 360 shares for the benefit of his sister, with ultimate remainders in all three funds in the descendants or heirs of the widow; that the life estates or annuities to testator's mother and sister were not of the same class as the remainder in the

fund to the widow; that the mother's and sister's life estates will not abate to make up a deficit in such remainder; that by limiting the remainders (in the absence of descendants) to the "heirs" of the widow, the testator conclusively demonstrated his intention that distribution was not to be made until her actual death; that such bequest requires the remaindermen literally to survive the widow rather than merely to survive the termination of the life estate, and cannot be accelerated; that the will has been construed and the nature of the remainders and the effect of the renunciation determined, and that such remainders will not be accelerated has been adjudicated in prior litigation.

█ Sec. 79 of the Administration Act, in force on March 6, 1934, when Elmer Sueske died, and April 15, 1935, when the widow renounced (sec. 80, ch. 3, Smith Hurd, Ill. Rev. Stat. 1935) reads:

"In all cases where a widow or surviving husband shall renounce all benefit under the will, and the legacies and bequests therein contained, to other persons, shall in consequence thereof, become diminished or increased in amount, quantity or value, it shall be the duty of the court, upon settlement of such estate, to abate from or add to such legacies and bequests in such manner as to equalize the loss sustained or advantage derived thereby, in a corresponding ratio to the several amounts of such legacies and bequests, according to the amount or the intrinsic value of each."

Sec. 50 of the Probate Act, approved July 24, 1939. (Par. 202, ch. 3, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 110.299]) reads:

"When a surviving spouse of the testator renounces the will and the legacies to other persons are thereby diminished or increased in value, the probate court, upon settlement of the estate, shall abate from or add

to the legacies in such a manner as to equalize proportionately the loss or advantage resulting therefrom."

In *Pace v. Pace*, 271 Ill. 114, the court said (120):

"Where legacies or devices are abated on account of a superior claim of the widow in consequence of her election the court will reduce legacies and devices of the same class proportionately, . . . ."

The statute in effect at the time of the renunciation and not the statute of 1939 applies to the facts of this case. Plaintiff states that the trust estate established for the benefit of the widow should be terminated when the reason for the postponement of the time of distribution to the remainderman no longer exists; that the doctrine of acceleration is based on the intention of the testator, and in the absence of contrary indications it will be presumed that acceleration of remainders was intended, in the event of renunciatory removal of the preceding particular estate; that the election of the widow to take against her deceased husband's will is equivalent to her death as respects the payment of legacies and the distribution of that part of the estate which is to be distributed under the will upon the happening of that event; that the nature of remainders, whether vested or contingent, does not control, the ultimate inquiry in all cases being the intention of the testator; that acceleration results where the sole reason for the postponement of remainder interest is to provide for the widow, and she renounces; that a trust for the evident purpose of the accomplishment of a particular object will terminate as soon as such object is accomplished, notwithstanding the fact that the trustee was invested with the fee; and that the trust estate held by the trustee under sub-paragraph (e) should be distributed to the remainderman and the trust estate declared terminated. Defendant answers that Joseph Steinbrecher could not be an "heir" of his daughter Emma Sueske prior

to her death; that plaintiff, therefore, has no interest, either vested or contingent, in the trust estate; that the life estates or annuities to testator's mother and sister by sub-paragraphs (f) and (g) were not of the same class as the remainder to the descendants or heirs of Emma Sueske in sub-paragraph (e); that such life estates or annuities therefore will not abate to make up any deficit in the remainder under sub-paragraph (e) caused by the renunciation; and that the remainder to the "heirs" of Emma Sueske requires the remaindermen to literally survive her rather than merely survive the termination of her life estate and, therefore, cannot be accelerated. Plaintiff does not contend that either sub-paragraph (f) or (g) was accelerated or should be terminated. He asks that under the equalization doctrine the court hold that sub-paragraph (e) was terminated at the time of the renunciation; that 375 shares be distributed to plaintiff, and that 185 shares and 180 shares, respectively, constitute the trusts created by sub-paragraphs (f) and (g).

The paramount rule in the construction of wills is to ascertain the intention of the testator and to give it effect, if not prohibited by law or public policy. The court will consider the whole will and determine the intention of the testator from a consideration of all the language used. The intention must be determined from the will in the light of the circumstances surrounding its execution. The words are to be given their ordinary and popular meaning, unless some other meaning is indicated. We have read all of the cases cited by the parties in support of their contentions. It is a familiar principle that in determining what is decided by a case, the general expressions of the court must be regarded as limited by the facts appearing in a particular case. Under sub-paragraph (e) the widow was to receive the income of the 750 shares, or the proceeds realized there-

from, during her lifetime. She was given the power to dispose of the corpus in her last will and testament "to whomsoever she may desire." If she did not exercise that power, then on her death the corpus of the estate "so being held for her use and benefit" was to be conveyed, transferred and assigned by the trustee to her descendants, if she had any, *per stirpes* and not *per capita,* and in the event of her decease leaving no descendants, the corpus was to be transferred and paid over to her "lawful heirs." Under sub-paragraph (e) the widow could not receive the corpus of the estate "so being held for her use and benefit." Sub-paragraphs (f) and (g) provide the circumstances under which the widow would take the corpus of the trusts set up in those paragraphs, and contain a clause that if the widow be deceased, the corpus should go to "her descendants, if she has any, *per stirpes* and not *per capita,* or if she has no descendants, then to her lawful heirs." Under sub-paragraphs (f) and (g) the widow could not receive the income, but only the corpus; nor was she given any power of appointment. We agree with plaintiff that when the widow renounced, she renounced all benefit under the will and not merely sub-paragraph (e). We also agree with plaintiff that the fact that the remainders are contingent is not necessarily controlling. In *Blatchford v. Newberry,* 99 Ill. 11, our Supreme Court said (47):

"We find it unnecessary to enter into the discussion of the doctrine of contingent and vested remainders. . . . And if the time for distribution has in fact arrived, the defendants' claim that the devise is contingent as to person would seem to be of force no longer, as that contingency would have been determined, and the donees have become ascertained by the arrival of the period of distribution. So that we are brought to that which at last is the prime inquiry in the case, what is the time of distribution under the will?"

In *Slocum v. Hagaman*, 176 Ill. 533, the court said (539):

"Whether the life estate is determined by a revocation, or by death, or by the renunciation of the widow, or by any other circumstance, which puts the life estate out of the way, the remainder takes effect, having only been postponed in order that the life estate might be given to the life tenant. (*Blatchford v. Newberry, supra.*) In the latter case of *Blatchford v. Newberry, supra*, we held that the doctrine was founded upon the presumed intention of the testator, that the remainderman should take on the failure of the previous estate, notwithstanding the prior donee may be still alive; and that the doctrine was to be applied in promotion of the presumed intention of the testator, and not for the purpose of defeating his intention. Where the intention of the testator is, that the remainder should not take effect till the expiration of the life of the prior donee, the remainder will not be accelerated."

Plaintiff maintains that the use of the word "heirs" should be construed to mean "heirs presumptive" of the widow, and that the use of the phrase "for her use and benefit" indicates that the intention of the testator was to provide an estate "for her use and benefit," and that the remainder should take effect upon the removal of the life estate when she renounced. That phrase is also used in sub-paragraphs (f) and (g). Its use in each instance was to identify that particular trust so that the shares therein mentioned would not be confused with the shares mentioned in the other sub-paragraphs. We agree with defendant that Joseph Steinbrecher could not be an heir of his daughter Emma Sueske prior to her death and that plaintiff has no interest either vested or contingent in the trust estate. In *People v. Emery*, 314 Ill. 220, the court said (225):

"An heir apparent or presumptive has no estate, legal or equitable, vested or contingent, in the real estate of the person whose heir he is, during the

latter's lifetime. No one can be the heir of a living person."

In *Levings v. Wood*, 339 Ill. 11, the court said (16): "No one can have heirs while living." The fact that the will gave the widow the power of appointment as to the 750 shares indicates that testator did not intend the remainder to take effect until the death of the widow. A will by the widow wherein she would exercise the power of appointment could not become effective on the presumed death of the widow.

As stated in the *Pace* case, where legacies or devises are abated on account of a superior claim of the widow in consequence of her election, the court will reduce legacies or devices of the same class proportionately. We agree with defendant that the life estates to testator's mother and sister given by sub-paragraphs (f) and (g) are not of the same class as the remainder to the descendants or heirs of the widow in sub-paragraph (e), and that such life estates will not abate to make up any deficit in the remainder under sub-paragraph (e) caused by the renunciation. In executing his will, testator had the welfare and maintenance of three persons in mind, his wife, his mother and his sister. The provisions for the widow were extinguished by her renunciation. This renunciation should have no effect on his intention that his mother and sister should have the income from 370 shares and 360 shares, respectively, during their lives.

The fact that Emma M. Sueske is 50 years of age and unmarried does not negative the possibility of descendants. In *Weberpals v. Jenny*, 300 Ill. 145, 156, the Supreme Court in passing upon the possibility of issue of a woman 67 years of age, said:

"The finding of the chancellor that possibility of issue was extinct in Esther C. Smith is clearly wrong. Nature has fixed no certain age, by years, at which child-bearing capacity in a woman shall begin or end.

The law recognizes the possibility of issue in all adult women, and the single fact that terminates the ability to bear children is death. *Hill v. Sangamon Loan and Trust Co.,* 295 Ill. 619.''

We are satisfied from a reading of the entire will that Elmer F. Sueske intended that distribution should not be made until his widow's actual death, as distinguished from her assumed death by her renunciation.

In *Sueske v. Schofield,* 376 Ill. 431, 437, the court, while calling attention to the power of testamentary disposition mentioned in sub-paragraph (e), was not called upon and did not decide whether such power was extinguished by the renunciation. In *Welch v. Caldwell,* 226 Ill. 488, the court discussed the will of Thomas J. Caldwell. The testator's widow, Elsie Caldwell, was appointed executrix and in the will she was given the power of appointment over certain charitable uses. The Caldwell will was again considered by the Supreme Court in *McGee v. Vandeventer,* 326 Ill. 425. In the *McGee* case it appears that Mrs. Caldwell renounced all benefit to her under her husband's will. Nevertheless, in her own will she exercised the power of appointment given her in his will. The court said (432).

''The appellees' contention that Mrs. Caldwell's renunciation of the will precluded her from acting as executrix, deprived her of the power of appointment under the will and vested the title and right of possession of the testator's property in his heirs, the appellees, is without foundation. The renunciation was in the form prescribed by section 13 of the Dower act and had no effect on the power. As required by that section, it renounced the benefit of any provision of the will for her benefit and elected to take instead her dower and legal share in the estate. A provision in a husband's will for his wife is in legal effect an offer on his part to purchase her statutory interest in his

estate for the benefit of the estate. (*Blatchford v. Newberry*, 99 Ill. 11; *Carper v. Crowl*, 149 id. 465; *ReQua v. Graham*, 187 id. 67; *Dunshee v. Dunshee*, 251 id. 405.) Her renunciation was a rejection of the provision made for her, and its effect was to obliterate from the will such provision, leaving the other provisions operative on the part of the estate not including her statutory interest. The will is not destroyed nor is any part of the estate rendered intestate. The widow may act as executrix or trustee of a trust or donee of a power in which she has no beneficial interest unless it appears by the will that the execution of the trust or exercise of the power is dependent on her acceptance of the provisions of the will for her own benefit. . . . Since Mrs. Caldwell had the whole of her life in which to declare the trust, her will, which took effect at the instant of her life's close, was within the power given by her husband's will."

Whether the widow may validly exercise the power of testamentary disposition mentioned in sub-paragraph (e) as to "the 10 shares" which the Supreme Court mentions, apparently depends on whether she may be said to have any beneficial interest therein. It will be observed that while the statute in effect at the time of the renunciation speaks of a widow or surviving husband "renouncing all benefit under the will," the 1939 Act leaves out the words "all benefit under the will." In *Dant v. Fidelity & Columbia Trust Co.*, 302 Ky. 54, 193 S. W. (2d) 399, the Court of Appeals of Kentucky said (401):

"It appears to be fundamental that under power of appointment the donee merely acts for the donor, and the power, when exercised, must be held to relate back to the time of the creation of the power, and to operate as if it had been originally contained in the donor's will. The underlying dogma of the law of powers of appointment is that such interest constitutes transfers

from the donor of the power, not from the donee. In practically all, if not all jurisdictions, there seems to be fundamental acceptance of this view with very few departures therefrom. See *Liggett v. Fidelity & Columbia Trust Co.*, 274 Ky. 387, 118 S. W. 2d 720; Jarman on Wills; Simes on Future Interests; Restatement of Property; Leach, Cases on Future Interests, 2d Ed., 1940; American Jurisprudence, Trusts; Paige on Wills.''

The fact that the testator gave his wife the power by her last will to dispose of the corpus of the 750 shares of stock is further indication of his intent that the title to the corpus of these shares should not pass until his widow's actual death. He knew that any will of his widow could not take effect until her death.

For the reasons stated, the decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*

LEWE, P. J., and KILEY, J., concur.