DOUGLAS PROPERTIES, a Corp., E. B. DOUGLAS Co., a Corp., M. A. SMITH, as Liquidator of Biscayne Trust Company, a Corp., and M. A. SMITH, as Liquidator of the Bank of Bay Biscayne, a Banking Corp., v. CHARLES H. STIX, as Trustee.

159 So. 1.

Division B.

Opinion Filed January 30, 1935.

*Hudson & Cason* and *S. J. Barco,* for Appellants;

*Shutts & Bowen* and *E. S. Quick,* for Appellee.

ELLIS, P. J.—The Douglas Properties, a Florida Corporation, was the owner in March, 1925, of certain lots of land in the City of Miami described as Lots Three (3), Four (4), Seventeen (17) and Eighteen (18) of Block One Hundred and Twenty-two (122) North, according to a plat thereof made by Knowlton, and had the right to the use of an alley ten feet in width running along the east side of lot sixteen. It executed a ninety-nine year lease upon that property to Flagler Street Company, a Florida Corporation, in March, 1925, which lease was duly recorded. The annual rental agreed to be paid was seventy-five thousand dollars, payable quarterly.

The lease contained a covenant to the effect that if the tenant should decide to erect a building upon the premises and it became necessary to borrow money on a mortgage or deed of trust for the "purpose of financing the building," then in such event the owner would unite with the tenant in the execution of a mortgage to encumber the fee.

After the execution of the lease the Flagler Street Company constructed a building on the leased premises and it became necessary to obtain money to pay for the same. The Douglas Properties Corporation, on September 25, 1925, joined with Flagler Street Company and the Venetian Arcade Company, the lessee of Flagler Street Company, in the execution of a mortgage upon the described premises to secure an indebtedness of three hundred thousand dollars, which mortgage was recorded in the public records of Dade County.

The Douglas Properties Corporation was organized for the purpose of engaging in the business of owning, holding, operating and dealing in real estate. The mortgage was executed for the purpose of raising funds with which to finance the construction of the building, which was of a substantial and permanent character and increased the value of the premises and of the interests of the Douglas Properties therein.

In August, 1927, nearly two years after the execution of the mortgage of September, 1925, the Flagler Street Company, the holder of the ninety-nine year lease, became indebted to St. Louis Union Trust Company, a Missouri Corporation, and Charles H. Stix, as trustees, in the sum of three hundred thousand dollars. That debt was evidenced by three hundred and thirty-eight First Mortgage six and one-half per cent. Bonds, dated August 1, 1927, which bonds were delivered to the named Trustees. Two hun-

dred and eighty-two of the bonds were in denominations of one thousand dollars each; thirty-one in denominations of five hundred dollars each, and twenty-five in denominations of one hundred dollars each. The first fifteen bonds were payable August 1, 1929; fifteen were payable one year later; sixteen were payable on August 1, 1931. All the bonds of one thousand dollars denomination were payable in blocks of seventeen, eighteen and nineteen on the first day of each recurring year successively, up to and including August, 1936; one hundred and forty-seven of the thousand dollars bonds were payable in August, 1937. The five hundred and one hundred dollars bonds were also payable August 1, 1937.

The bonds were payable to bearer or to the registered holder thereof. The accumulating interest was payable semi-annually on the first days of February and August of each year.

To secure the payment of the principal and interest on the bonds The Flagler Street Company and the Douglas Properties executed and delivered to St. Louis Union Trust Company and Charles H. Stix, as Trustees, a mortgage dated August 1, 1927, upon the leasehold estate of Flagler Street Company and the fee simple estate held by the Douglas Properties.

The mortgage deed was duly recorded. On May 8, 1933, Charles H. Stix, as Trustee, exhibited his bill in chancery in the Circuit Court for Dade County for the enforcement of the mortgage lien of August 1, 1927. He joined as defendants Douglas Properties, Flagler Street Company, Venetian Arcade Company, a corporation, Venetian Securities and Investment Company, a corporation, E. B. Douglas Company, a corporation, M. A. Smith, as Liquidator of Biscayne Trust Company, a corporation, M. A.

Smith, as Liquidator of Bank of Bay Biscayne, R. M. Price, as Receiver, and United States of America.

By an amendment to the bill, filed May 17, 1933, John C. Knight was added as a defendant, and another paragraph was added, numbered III-K, in which it was alleged that the Douglas Properties agreed as part of the consideration for the lease executed to Flagler Street Company that if the lessee decided to erect a building on the premises and it became necessary to borrow money on a mortgage or deed of trust to enable the lessee to finance the building that the Douglas Properties would join in the execution of the mortgage to secure the payment of the debt incurred for that purpose; that the lessee decided to erect the building and the two corporations executed the mortgage of September, 1925; that prior to the execution of the mortgage of August 1, 1927, sought to be foreclosed in these proceedings, Douglas Properties, as an inducement to the making of the loan, represented that the funds obtained would be used in paying off and satisfying the indebtedness secured by the mortgage of September, 1925, that the complainant relied upon such representations, and that the mortgage was satisfied and cancelled of record on December 6, 1927.

Another amendment was made in July, 1933, designed to make clearer the Douglas Properties interest in and to the alley on the east side of Lot Sixteen.

The bill alleged that forty-six of the bonds which matured on or prior to August 1, 1931, were paid, and all interest on the indebtedness was paid to and including February 1, 1932; that the mortgagors failed to pay the bonds numbered forty-seven to sixty-three, inclusive, which became due August 1, 1932, and they also failed to pay the interest falling due on bonds numbered forty-seven to three hundred

and thirty-eight, inclusive, which interest became due August 1, 1932, and February 1, 1933.

It is alleged that upon such occurring the Trustees have written notice to both mortgagors of such default by depositing such notices in the United States mails, postage prepaid, addressed to the parties at Miami.

Copies of the notices were attached to the bill and made a part of .it. After notifying the parties of the default the notices contained the following clause:

"This notice of default is given you in accordance with the terms and provisions of said mortgage deed of trust, and in particular in accordance with the terms and provisions of Section 4 of Article V of said mortgage deed of trust, in order to enable the undersigned, as such trustees, in the event that said default shall not be cured in accordance with the terms of said mortgage deed of trust, to take such action with respect thereto as may be permitted ·to, or required of the undersigned trustees by law and by the terms of said mortgage deed of trust."

A copy of the mortgage was attached to the bill and made a part of it. It contained a provision that if and when the leasehold owner shall make default in payment of any principal money of any of the bonds or fail to deposit the amount of money required to be paid, or make default in the payment of interest upon the bonds or in making the deposit of the amounts required to pay the same, or shall make default in the performance of observance of any condition or obligation of the bonds, or by the mortgage imposed upon the leasehold owner and such default shall continue for the period of thirty days after written notice to the leasehold owner of such default then in such case the

"Trustees may, either through a Receiver, to the appointment of which by any court of competent jurisdiction the

parties of the First Part hereby consent, or by their attorneys or agents, enter into and upon and take and possess the properties hereby conveyed by both Leasehold Owner and said Fee Owner, or any part thereof, and may exclude the Leasehold Owner, and the Fee Owner, their agents and servants wholly therefrom from having and holding the same, and may use, operate, manage and control said premises and property," etc.

The mortgage also contained the following provision:

"Section 4. In case the Leasehold Owner shall make default as in Section 1 of this Article V provided, and such default shall continue for the period of time therein mentioned, if any, the Trustees may and upon written request of the holders of one-fourth (1/4) in amount of the bonds outstanding at the time, being first indemnified by them to its satisfaction against loss or liability in the premises, shall proceed to protect and enforce its rights and the rights of the bondholders under this Indenture by a suit or suits in equity or at law, whether for specific performance of any covenant or agreement contained herein or in aid of the execution of any power herein granted or for any foreclosure hereunder; or for the enforcement of any proper, legal or equitable remedy as the Trustees, being advised by counsel learned in law, shall deem most effectual to protect and enforce the rights aforesaid."

The bill alleged that the St. Louis Union Trust Company, as trustee, resigned its trust under the mortgage on March 1, 1933, and gave notice of such resignation to both the Flagler Street Company and the Douglas Properties, notice of such resignation being in writing; that pursuant to that resignation the Trust Company was discharged of its trust on May 5, 1933, and no other or successor trustee had been

appointed and by reason thereof the complainant Stix is the sole trustee.

The bill alleges that by reason of the defaults set forth in the bill the complainant has elected to accelerate the maturity of all the indebtedness secured by the mortgage and to foreclose the mortgage for the full amount due, which is alleged to be two hundred and fifty-four thousand dollars principal with interest from February 1, 1932, and such other sums as are secured.

Expenses to which the complainant had been subjected, including the obligation to pay solicitors' fees, were set forth by proper allegations.

It was alleged that in November, 1932, Douglas Properties began a suit in the Circuit Court against Flagler Street Company and others to obtain a cancellation of the lease and secured the appointment of a Receiver of the premises; that R. M. Price was named Receiver and duly qualified and is now in possession of the premises and the complainant had obtained leave from the court to join Price as Receiver as a defendant in the cause.

It is alleged that the United States has or claims a lien under a tax lien filed against "Douglas Properties, Inc.," which was filed by the United States Internal Revenue Collector. Other defendants named were alleged to hold claims or rights or interests, the character of which is unknown to the claimant, but alleged to be inferior to the complainant's lien.

It is alleged that the defendants failed to pay certain taxes for the year 1931 and the property was sold in 1932 for city taxes amounting to $10,133.16 and in August, 1932, the premises were sold for State and County taxes amounting to $8,645.63 and was also sold to pay certain other taxes

amounting to $69.75 and $133.52 and the certificates are now outstanding.

It is alleged that the buildings located on the premises are rented and will produce an income more than sufficient to pay their operating expenses; that the mortgagors pledged to the complainant the rents, issues and profits of the premises and that the income therefrom over and above the necessary expenses of operating the building should be applied to the indebtedness secured by the mortgage.

There was a prayer for an accounting of the amount due and all expenses incurred to which the complainant had been subjected; that the Flagler Street Company be decreed to pay the amount found to be due and in default thereof that the property be sold and the proceeds applied to the satisfaction of the debt; that the Receiver, R. M. Price, be required to account to the complainant for all moneys collected by him during the pendency of the suit and that he be required to pay it over to the complainant and that in the event Price should be discharged as Receiver the court in this proceeding appoint one to manage the properties, collect the rents due and have the usual and customary powers of receiver.

On application made by complainant the Chancellor on May 23, 1933, made an order that R. M. Price, who was appointed receiver in the cause begun by Douglas Properties against the Flagler Street Company for cancellation of the lease be held to be receiver for the benefit of the complainant in the instant case as well, with full power to take charge of, manage and rent the properties; that he continue to make report to the court in each case. Price was required to give bond to be approved by the court conditioned to truly account for all moneys and properties coming into his hands.

Douglas Properties objected to the application for the appointment of a receiver. The basis of the objection was that the property was of greater value than the amount of the indebtedness to the complainant; that the property being now under the control of R. M. Price, as Receiver appointed in the case brought by Douglas Properties against Flagler Street Company, who was managing it in a satisfactory manner, had repaired the roof to the Venetian Arcade Building at considerable expense and had made other necessary repairs and had paid taxes in the sum of $6,905.00 and paid for insurance against loss by fire and tornado in the sum of $2,595.00, and paid commissions and other expenses, in view of those facts, no receiver was necessary.

The United States answered the bill by its attorney.

The record then discloses that testimony was taken before Honorable Paul D. Barns, Judge. The testimony related to the value of the particular properties and their income producing power.

In July, 1933, M. A. Smith, as Liquidator of Biscayne Trust Company and of the Bank of Bay Biscayne, move to dismiss the bill. E. B. Douglas Company also moved to dismiss. Douglas Properties moved to strike certain parts of the bill as amended and for lack of a necessary party complainant, insisting that St. Louis Union Trust Company should be joined as a party complainant.

The court denied all motions. Thereupon the Douglas Properties, E. B. Douglas Company, M. A. Smith as Liquidator of the two Trust and Bank corporations, entered their appeal from the order of May 23, 1933, appointing a Receiver and from the order of September 12, 1933, denying the motions to strike.

No supersedeas was taken and on September 26, 1933, before the entry of appeal the complainant by leave of the

court amended the bill of complaint by joining as defendant the St. Louis Union Trust Company, a corporation, as trustee. That Corporation then, in November, answered the bill.

A seemingly unnecessarily long statement of the substance of the pleadings in the case is made that the questions presented by the briefs may be more readily understood and to avoid as much as possible further quotations from the bill and exhibits.

The first question challenged the efficiency of the acceleration clause to the degree it is used by the complainant in bringing his bill to enforce the mortgage for the entire debt.

The mortgage provides in terms that if default is made by the leasehold owner in the matter of the payment of principal or interest and such default shall continue for a period of thirty days the Trustees shall proceed to protect and enforce their rights and the rights of the bondholders under the mortgage by suit or suits in equity or at law.

The right secured under the mortgage in the event of such default, and the continuance of same for the period of thirty days after written notice to the leasehold owner of such default, is expressly provided for by directing the Trustees to declare the principal of all outstanding bonds secured by the mortgage due and payable, "and the same shall thereupon forthwith become due and payable." There is a provision in the mortgage also under which the default may be cured before the recovery of any judgment or decree upon the bonds or mortgage, or before the making of any sale of the premises, and in such case the "original maturities of said bonds shall be restored as if no action had ever been taken by the Trustees or the holder of the bonds secured hereby with reference to the anticipation of the maturity of the said bonds."

The bill alleges that notice was duly given by the Trustees to the leasehold owner and mortgagors of default in payment of both principal and interest and such default continued for thirty days before the filing of the bill. .

The bill also alleges that the bonds were executed and delivered to the Trustees. No question is raised as to the possession and ownership or control of the bonds by the Trustees.

In those circumstances no preliminary declaration that the Trustees have declared the entire debt to be due is required. The bringing of the suit and the declaration in the bill of such determination are sufficient.

The rule approved in this State is that, where the mortgage provides that if any interest payment is not paid within thirty days next after it becomes due said mortgage shall become "due and payable forthwith or thereafter at the option of the holder," the institution of a suit for foreclosure is the exercise of the option to declare the whole of the principal sum and interest secured by the mortgage to be due and payable. See Gus' Bath, Inc., v. Lightbown, 101 Fla. 1205, 133 South. Rep. 85; 41 C. J. 851; Corlett v. Wood, 81 Fla. 510, 88 South. Rep. 268; Clay v. Gardner, 103 Fla. 135, 138 South. Rep. 490.

In the case at bar the parties expressly agreed that the Trustee shall proceed to protect and enforce his rights either by specific performance or foreclosure, but that the default might be "made up or cured before recovery of judgment or decree" and that thereupon the "original maturities of said bonds shall be restored." The mortgage refers to no option to declare preliminarily to suit brought that the debt shall be due in its entirety, but instead it provides that in case of default and notice of default given and such default continues for thirty days the Trustees shall proceed to pro-

tect their rights by foreclosure and that the mortgagor may "cure" the default and restore the maturities before judgment or decree or even the making of any sale of the trust estate.

The first point in the brief is not well taken.

The second question discussed in appellant's brief is whether the mere resignation of the St. Louis Union Trust Company, as trustee, eliminated that corporation "as a necessary party in a suit to foreclose a mortgage."

The Trust Company, on March 1, 1933, by an instrument in writing under the seal of the Corporation, resigned as one of the Trustees. The execution of the instrument was duly acknowledged before a notary public in St. Louis, Missouri, "duplicate executed original copies" of that instrument were sent by United States mail to Flagler Street Company and to Douglas Properties at Miami, Florida.

The making of the St. Louis Union Trust Company, a party defendant before the appeal was taken cured the alleged defect, if indeed any existed originally in not making it a party complainant.

In the matter of Trustee relationship the doctrine of automatic succession is that, in the absence of a statute to the contrary, where a vacancy occurs in a trusteeship a successor appointed by the trust instrument takes his place automatically without court action and it is competent for the creator of the trust to provide directly for the filling of vacancies in the trusteeship by the naming of the persons to be substituted. See Aldridge v. Greisch, 144 Miss. 281, 109 South. Rep. 713.

The general principle that when a trustee accepts a trust he cannot divest himself of his office except by order of a court of competent jurisdiction rests upon the doctrine that a trust shall not fail for want of a trustee. The general

principle does not apply where provision has been made in the instrument creating the trust for a successor to the trustee named, or where in case more than one trustee is named. In the latter case the death or resignation of one trustee does not defeat the trust or tend to do so for the duties and powers of the trusteeship devolve upon the remaining trustee. The general rule is that it is the intention of the donor of the power which governs in the case. See Tiffany and Bullard on The Law of Trusts & Trustees, 368.

There is no provision in the trust deed which indicates that it was the purpose of the donor of the power to make the number of trustees as named in the instrument imperative. The trust deed provides that the trustees or either of them may resign and be discharged by written notice to the mortgagors.

When the St. Louis Union Trust Company resigned as Trustee and gave the required notice the other Trustee named was not a successor. He was the surviving or remaining Trustee. Therefore the provision of the trust deed as to the "execution and delivery of a proper instrument or instruments of transfer of the trust to the successor or successors in trust" does not apply. Moreover, the deed expressly provides that:

"In case of resignation, removal or disqualification for any cause of either St. Louis Union Trust Company or Charles H. Stix, Trustees herein, or in case of the death of said Charles H. Stix, the remaining Trustee shall thereupon without the execution of any instrument of transfer, or other formalities succeed to all the rights of the Trustees herein."

That clause is followed by one making provision for the appointment of a new trustee in the event of the "resigna-

tion, removal, disability or disqualification for any cause of *both* of said Trustees." (Italics mine.)

The able brief of counsel for the applicants has been examined with much care upon this point, as upon other questions presented, and there is no criticism to be made of the principle announced that a "Trustee in a trust deed is a necessary party to a suit to foreclose," but the point is not applicable to the case at bar. When the St. Louis Union Trust Company resigned its trusteeship, as it had a right to do under the terms of the instrument creating the trust, it was no longer a trustee, unless it became necessary for that Company to execute and deliver to a successor a proper instrument of transfer to effectuate its resignation. It is not possible, however, to place that construction upon the language of the instrument. It is not required by the evident purpose of the mortgagors. It is not apparent from the instrument that the donors of the power made two trustees imperative. If both trustees desired to resign a proper instrument of transfer to one or two successors became necessary, but if one trustee resigned there was no successor and the trust could not fail.

The second point is therefore not sustained.

The third question is, may the State entertain jurisdiction as to the United States in the absence of a request by the Trustee of the Collector of Internal Revenue as provided by 26 U. S. C. A., Sec. 136.

The statute above referred to has no application to the case at bar which is not an effort on the part of the Trustee to require the United States under the direction of the Commissioner of Internal Revenue to file a bill in chancery in a District Court of the United States to enforce the lien held by it.

The Act of March 4, 1931, 28 U. S. C. A., Sec. 901, ap-

plies under which by the terms of the Act consent of the United States is given to be named as a party in the suit. The intention of the two Acts is clearly apparent from the language and no construction of the Act or interpretation of the words used is necessary.

The third point is not sustained. This disposes also of the fourth and fifth questions presented by the brief.

The remaining question involves the matter of the appointment of a receiver and whether in the circumstances such appointment was necessary or proper in view of the evidence tending to show that the property, exclusive of rents and profits, constitutes ample security for the debt secured by the mortgage. That instrument unequivocally provides that in case of default the trustees may either through a receiver to which the mortgagors gave consent by the terms of the mortgage, or by their agents or attorneys, enter into and upon and take and possess the properties and may exclude the leasehold owner and fee owner wholly therefrom and the trustee shall be entitled to collect and receive all earnings, income, rents and profits from the same and every part thereof.

A receiver was already in possession under the first suit above mentioned. The court did not change the personnel of the receivership. His administration of the properties was apparently efficient and satisfactory to the court. Not only was the complainant entitled to the appointment of a receiver under the terms of the mortgage, but in view of the evidence from which the court determined that a receivership was proper.

Upon that phase of the question, this Court, following a long line of decisions, would not disturb the findings of the Chancellor unless the error was clearly made to appear, which burden imposed by the rule has not been met.

So the sixth point is not sustained.

The orders appealed from are affirmed.

TERRELL and BUFORD, J. J., concur.

WHITFIELD, C. J., and DAVIS, J., concur in the opinion and judgment.