ESTATE OF ROBERT R. WARE, DECEASED, ROBERT R. WARE, JR., EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5192–68. Filed October 19, 1970.

*John Donovan Bixler* and *Crane C. Hauser*, for the petitioner.
*Seymour I. Sherman*, for the respondent.

### OPINION

QUEALY, *Judge:* The respondent determined a deficiency in the Federal estate tax of the Estate of Robert R. Ware, deceased, in the amount of $290,729.03 of which the sum of $289,493.66 is in dispute. The petitioner is the executor of the estate.

The amount in dispute is attributable to respondent's inclusion in the decedent's gross estate of the value ($865,242.22) of five trusts created by the decedent. The only issue presented for decision is whether decedent, during his lifetime, effectively released his power under each of the trusts to accumulate or distribute income. If so, the value of the corpus of each of the trusts would not be includable in his gross estate under sections 2036 and 2038.[1]

The facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Robert R. Ware (hereinafter referred to as decedent), deceased, was a resident of Illinois at the time of his death on July 25, 1964. Robert R. Ware, Jr. (hereinafter referred to as petitioner), was appointed executor of decedent's last will and testament by the Probate Division of the Circuit Court of Cook County on August 18, 1964, and has served in that capacity at all pertinent times. The Federal estate tax return for decedent's estate was filed with the district director of internal revenue at Chicago, Ill.

Decedent was survived by his wife, Elizabeth D. Ware (hereinafter referred to as Mrs. Ware), and four children. The names and dates of birth of decedent's children are as follows:

| Name of child | Date of birth |
|---|---|
| Robert R. Ware, Jr. | Mar. 18, 1913 |
| Evelyn Ware Peters | May 2, 1916 |
| John Dickerson Ware | June 15, 1922 |
| Ralph Clark Ware | June 19, 1925 |

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

On or about December 26, 1936, decedent created five trusts, sometimes known and referred to as the Robert Rea Ware Trusts, A, B, C, D, and E, the principal of each trust consisting of shares of common stock of the Chicago Roller Skate Co., an Illinois corporation (hereinafter referred to as the company). The primary beneficiary of Trust A was decedent's wife, and the primary beneficiary of each of the other four trusts was, in each instance, one of the aforementioned four children.

On the date of decedent's death, the assets of Robert Rea Ware Trusts A, B, C, D, and E each consisted of small amounts of cash and 864 shares of the Chicago Roller Skate Co. registered on the corporate books of said company, all as follows:

| Name of shareholder on corporate books | Number of shares held | Cash |
|---|---|---|
| Elizabeth D. Ware, successor trustee under Robert R. Ware Trust A | 864 | $297. 82 |
| Robert R. Ware, Jr., successor trustee under Robert R. Ware Trust B | 864 | 215. 84 |
| John D. Ware, successor trustee under Robert R. Ware Trust C | 864 | 236. 05 |
| Ralph C. Ware, successor trustee under Robert R. Ware Trust D | 864 | 288. 70 |
| Evelyn W. Peters, successor trustee under Robert R. Ware Trust E | 864 | 203. 81 |

Each trust instrument commenced with the following language:

THIS AGREEMENT, made and executed at Chicago, Illinois, this 26th day of December, A.D. 1936, by and between ROBERT REA WARE, party of the first part, and said ROBERT REA WARE, as Trustee, and, subject to the terms hereof, RALPH WARE and WALTER WARE, as Successor Trustees, as hereinafter stated, parties of the second part, all of the City of Chicago, County of Cook and State of Illinois,

Ralph Ware and Walter Ware were brothers of decedent.

Each trust agreement contained, *inter alia*, the following provisions:

The said ROBERT REA WARE shall be and continue the sole Trustee hereunder as long as he shall live and remain competent to act as such Trustee.

Should said ROBERT REA WARE cease to be such Trustee, then and not until then, said RALPH WARE and WALTER WARE shall become interested as Trustees in the trust hereby created as successors to said ROBERT REA WARE, and shall become entitled to receive and shall receive and have delivered and paid to them as such Successor Trustee, the whole of said Trust estate with the authority and power of the Trustee herein and subject to the limitations thereof, except that the right and power hereinafter granted to the Trustees herein to use his sole discretion in the distribution of the income or the accumulation of same shall be exercised by the Successor Trustees only in the event said Trustee becomes incompetent, and during the period of such incompetency, and under no other circumstances or contingencies.

\*       \*       \*       \*       \*       \*       \*

Should any .of said Successor Trustees, die, resign, become incapacitated or refuse to act as such, then, and not until then, the right to designate a Suc-

cessor Trustee * * * shall vest in ROBERT REA WARE, Trustee, during his lifetime, and after his death in ELIZABETH D. WARE, wife of said ROBERT REA WARE. * * *

TRUSTEE'S POWERS.—Said Trustee shall have full power at any time, and from time to time, to sell or exchange any of this trust property or estate, for such price or prices, or upon such terms and conditions as he may determine. * * * He shall likewise have the full power and authority, in his sole discretion, to borrow money and to secure the sum so borrowed by a pledge or mortgage of any and all portions of said trust estate, and he shall out of the corpus or income of said trust estate, or out of both such corpus and income, repay the sum so borrowed. Said Trustee shall have full authority to invest or reinvest any sums so borrowed, and collect and receive the rents, income and profits arising from the trust estate herein created; it being the intention to have the Trustee exercise such rights, power and authority in respect to the management, control and disposition of said trust estate for the use and benefit of the beneficiaries herein as said ROBERT REA WARE has with respect to the property absolutely owned by him. * * *

INCOME. * * * The balance or the remainder of said income [after expenses] shall, in the sole discretion of the Trustee herein, be distributed from time to time to the beneficiaries herein or accumulated for their respective benefits. * * *

Under the terms of Trust A, after the death of the settlor, all net income (including income from any previously undistributed income) is payable to decedent's wife during her widowhood and until her remarriage "provided no divorce has taken place between said parties up to date of said ROBERT REA WARE's demise."

In the event the decedent's wife satisfies the foregoing conditions, Trust A further provides that only one-third of the income of the trust is to be payable to her if she remarries after decedent's death.

Following Mrs. Ware's death (assuming she survived the settlor), the corpus of Trust A, together with any accumulated and undistributed income, is to be divided into four equal portions for the benefit of each of the decedent's four children. Each son is to receive the net income and one-fourth of his share of the corpus at ages 25, 30, 35, and 40 years. The daughter is to receive the net income of her share until age 18, and to thereafter receive each month one two-hundred-fortieth of her share of the corpus. Finally, Trust A provides for gifts over to the surviving issue of any child who dies before full distribution, and in default of such issue, to the siblings of said child.

Trust B was established for the benefit of petitioner, who was more than 21 years of age at the date of its execution. It provided that upon decedent's death the corpus (including any undistributed or accumulated income) was to be divided into three equal portions and, together with income thereon, paid over to petitioner as follows:

one third (⅓) of same shall be paid to him immediately upon his reaching the age of twenty six (26) years, one third (⅓) as soon as he reaches the age of thirty one (31) years, and the balance as soon as he reaches the age of thirty six (36) years.

In the event of petitioner's death prior to total distribution, gifts over were provided in favor of the surviving children of the beneficiary, and in default of such surviving children to the siblings of the beneficiary.

Each of Trusts C and D, for the benefit, respectively, of John Dickerson Ware and Ralph Clark Ware, neither of whom had reached age 21 at the time of the execution of their trusts, contained provisions similar to those of Trust B with respect to the distribution of corpus following decedent's death plus a further provision that should the decedent die prior to age 21 of the beneficiary, income was to be payable to such beneficiary until age 21 at which time principal "as well as the accumulated income thereof" was to be divided into *four* equal portions and paid over at ages 21, 26, 31, and 36. Gifts over in the event of death were provided for in provisions similar to those of Trust B.

Trust E, for the benefit of Evelyn P. Ware, provided that upon decedent's death, the corpus and undistributed income of the trust was to be divided into 240 equal shares and "together with the income thereon shall be paid to said EVELYN P. WARE in monthly installments." Again, gifts over in the event of her death were provided for in provisions similar to those of Trusts B, C, and D.

Each of the trusts contained an express reversionary provision to the effect that should the primary beneficiary predecease decedent, the trust was to terminate and the corpus was to be reconveyed to the decedent.

Each of the five trust instruments bore the following signatures:

ROBERT R. WARE [SEAL]
ROBERT R. WARE, *Trustee*
RALPH WARE, *Successor Trustee*
WALTER WARE, *Successor Trustee*

On April 12, 1940, decedent executed notorized documents with respect to each of the foregoing trusts, each of which states in part:

I, ROBERT REA WARE, * * * do on this 12th day of April, A.D. 1940, resign as Trustee of said Trust, being unwilling to act any more as such Trustee * * * and I do further Renounce, Disclaim, Convey and Quit-claim unto ELIZABETH D. WARE and ROBERT R. WARE JR. the right reserved by me in said Trust Agreement, to designate, during my lifetime, a Successor Trustee in lieu of a Successor Trustee mentioned and described in said Trust Agreement, who may die, resign, become incapacitated or refuse to act as such, * * *

On May 1, 1940, decedent executed another series of notarized documents by which he purported to quit-claim and convey to the primary and secondary beneficiaries of the various trusts all right, title, and interest in and to the trust corpus which he might have had under certain provisions in each of the respective trust instruments. He also expressed a specific intention to void and nullify a possible reverter in the corpus.

On May 14, 1943, decedent executed a final series of notarized documents with respect to each of the five trusts confirming those instruments dated April 12, 1940, and May 1, 1940. Each of those documents provided in pertinent part:

I, ROBERT REA WARE, * * *, did execute and deliver two instruments, dated April 12, 1940 and May 1, 1940 respectively, by which I intended to and did irrevocably and forever renounce, resign, and relinquish any and all rights, privileges, titles, interests, duties, and claims of any and every nature and description whatsoever vested in or belonging, reserved or accruing to me, as Trustee or as an individual, in said ROBERT REA WARE TRUST * * * Agreement, and in confirmation of said instruments dated April 12, 1940 and May 1, 1940 and by these presents, I, individually and as Trustee, hereby irrevocably and forever renounce, resign, assign, and relinquish to the beneficiaries thereunder, in accordance with their respective rights thereunder, any and all past, present, and future rights, privileges, titles, interests, duties, and claims of any and every nature and description whatsoever heretofore or now vested in, belonging, or reserved to me or hereafter vesting in, belonging, or accruing to me, as Trustee or as an individual, * * *

On April 10, 1943, Ralph Ware and Walter Ware, brothers of decedent and the persons named in each of the five trusts as successor-trustees, executed a document which, after reciting the execution of the trusts and the document of April 12, 1940, stated:

The undersigned have fulfilled their duties as successor-trustees of all of said trusts from April 12, 1940, until the present, and take this opportunity of informing or calling the attention of any person or persons, whom it may concern, that they jointly and severally do not care to assume the responsibility of such successor-trustees of all of said trusts any longer; that they resign as such successor-trustees of said trusts, and each one of them refuses to act as such successor-trustees of said Robert Rea Ware Trusts 'A', 'B', 'C', 'D' and 'E'.

By documents dated April 16, 1943, Elizabeth D. Ware and Robert R. Ware, Jr., purported to designate individually Elizabeth D. Ware, Robert R. Ware, Jr., and Evelyn W. Peters (formerly Evelyn P. Ware) as successor-trustee of the respective trust of which each was primary beneficiary. They also purported to designate themselves successor-trustees of the John Dickerson Ware and Ralph Clark Ware trusts for the period of minority of the respective primary beneficiaries thereof, each such beneficiary to become trustee of his respective trust upon reaching majority.

At the time decedent executed the 1940 and 1943 documents pertaining to the various trusts created by him in 1936, the primary beneficiaries of two of said trusts, John Dickerson Ware and Ralph Clark Ware, were minors. Originals of these documents, dated April 12, 1940, May 1, 1940, April 16, 1943, and May 14, 1943, were delivered by decedent to the primary income beneficiaries of Robert Rea Ware Trusts A, B, C, D, and E when the aforementioned primary income beneficiaries were competent and of legal age.

At all pertinent times each of the five trusts made provision for various contingent and unascertained beneficiaries.

No guardian ad litem or other duly authorized person or representative was ever appointed to consent for or otherwise represent minor, contingent, unascertained, or unborn beneficiaries of any of the five Robert Rea Ware Trusts with respect to any of the changes purportedly effected therein by the various documents executed by decedent in 1940 and 1943.

At all pertinent times income of each of the five trusts was distributed currently to the respective income beneficiaries thereof.

At no time prior to his death did decedent become incompetent, and no proceeding in any court was ever commenced for the purpose of removing him as trustee.

In this case, decedent created five trusts. Each trust instrument makes decedent the sole trustee for life and as long as he remains competent. Each instrument identified successor-trustees. They were given the same authority and power of the decedent as trustee, except that the power given to the trustee to use his sole discretion as to the accumulation or distribution of the income of the trust was to be exercised by the successor-trustees only in the case of decedent's incompetency and under no other circumstances. In each trust, decedent retained the right to designate, during his lifetime, a successor to the successor-trustee. In addition, each instrument made provision for various contingent and unascertained classes of beneficiaries.

On April 12, 1940, decedent purported to resign as trustee of each trust and transfer to his wife and oldest son the right to appoint substitute successor-trustees. On May 1, 1940, decedent purported to convey to the primary and secondary beneficiaries of each of the trusts any rights and interests he might have had to the trust corpus and specifically relinquished his reversionary interests. On May 14, 1943, he confirmed his actions of 1940.

The retention by a grantor of a trust of the right, as settlor or trustee, to accumulate or distribute income requires the inclusion in his gross estate, under section 2036, of the date-of-death value of all property subject to the retained right. *United States* v. *O'Malley*, 383 U.S. 627 (1966). Section 2038 would also apply to this situation. *Commissioner* v. *Hager's Estate*, 173 F. 2d 613 (C.A. 3, 1949) ; sec. 20.2038–1(a), Estate Tax Regs.[2]

---

[2] Sec. 20.2038–1 Revocable transfers.

(a) *In general.* * * *

*      *       *       *       *       *       *

For example, section 2038 is applicable to a power reserved by the grantor of a trust to accumulate income or distribute it to A, and to distribute corpus to A, even though the remainder is vested in A or his estate, and no other person has any beneficial interest in the trust. * * *

The issue is whether decedent, during his lifetime, effectively resigned or released his power under each of the trust instruments to distribute or accumulate income so that the corpora of the five trusts were not properly includable in his gross estate under sections 2036 and 2038.[3]

It is well established that State law is determinative of the rights and interests in property subject to the Federal estate tax, e.g., *Morgan v. Commissioner*, 309 U.S. 78 (1940). We must determine the substance of the applicable State law and apply the estate tax provisions to the rights and interests so determined.

In the instant case, the laws and decisions of Illinois are determinative of the rights and interests which decedent had at his death. For the most part, Illinois law is reflective of the great weight of authority in this area.

A trustee, once having accepted a trust, cannot thereafter relieve himself of the duties and responsibilities of his trusteeship at his discretion. A trustee may resign where he obtains permission from a proper court. *Spengler* v. *Kuhn*, 212 Ill. 186, 72 N.E. 214 (1904) ; and *Sauvage* v. *Gallaway*, 329 Ill. App. 38, 66 N.E. 2d 740 (1946).[4] See, generally, *In re Goldner's Will*, 115 N.Y.S. 2d 104 (1952) ; *Riggs* v. *Moise*, 344 Mo. 177, 128 S.W. 2d 632 (1939) ; *Richmond* v. *Arnold*, 68 Atl. 427 (R.I. 1907) ; *Nixon's Estate*, 235 Pa. 27, 83 Atl. 687 (1912) ; *Green* v. *Blackwell*, 31 N.J. Eq. 37 (1879) ; *Bogle* v. *Bogle*, 3 Allen 158 (Mass. 1861). He may resign in accordance with specific provisions in the trust instrument providing for the resignation of the trustee, *Reichert, et al.* v. *Missouri & Illinois Coal Co.*, 231 Ill. 238, 83 N.E. 166 (1907). See, generally, *Bruce* v. *Republic Nat. Bank & Trust Co.*, 74 S.W. 2d 461 (Tex. Civ. App. 1934) ; *Stearns* v. *Fraleigh, et al.*, 39 Fla. 603, 23 So. 18 (1897) ; and *Ellis* v. *Boston Hartford & Erie Railroad Co.*, 107 Mass. 1 (1871). Finally, a trustee may resign with the consent of all the beneficiaries if they all have the capacity to consent and are fully ascertained. See, generally, *Lane* v. *Tarver*, 153 Ga. 570, 113 S.E. 452 (1922) ; *Barbour* v. *Weld*, 201 Mass. 513, 87 N.E. 909 (1909) ; *Woodbridge* v. *Bockes*, 59 App. Div. 503, 69 N.Y. Supp. 417 (1901), aff'd. 170 N.Y. 596, 63 N.E. 362; and *Henderson* v. *Sherman*, 47 Mich. 267, 11 N.W. 153 (1882). If there are contingent or

---

[3] Respondent does not challenge the effectiveness of decedent's relinquishment of his reversionary interests in the trusts. The statutory notice does not rely on sec. 2037, and the documents of May 1, 1940, are relevant only from a historical standpoint.

[4] *Hormann* v. *Northern Trust Co.*, 114 F. 2d 118 (C.A. 7, 1940), certiorari denied 311 U.S. 713, is also supportive of this general proposition. The Court of Appeals held that the District Court, in the context of Illinois law, did not abuse its discretion in denying the trustee's motion that it be allowed to deposit the trust assets with the court and be discharged as trustee. It is clear that such action is inconsistent with the existence of any inherent right in the trustee to resign at will. See also *In re Will of Hartzell*, 43 Ill. App. 2d 118, 192 N.E. 2d 697 (1963).

unascertained beneficiaries, resignation by consent is impossible. *Williams* v. *Hund*, 302 Mo. 451, 258 S.W. 703 (1924) ; and see *Altemeier* v. *Harris*, 403 Ill. 345, 86 N.E. 2d 229 (1949), for a statement of this rule in the context of a termination of a trust.[5]

Petitioner, citing *Douglas Properties* v. *Stix*, 118 Fla. 354, 159 So. 1 (1935), and *Aldridge, et al.* v. *Breisch*, 144 Miss. 281, 109 So. 713 (1926), argues that the rule that, in the absence of provision for resignation in the instrument or consent of the beneficiaries, a trustee may resign only with the consent of a proper court applies only where the trust would fail upon the resignation of the trustee, and that a trustee may resign at will where the trust instrument provides for successor-trustees. We disagree with the petitioner.

In *Douglas Properties* v. *Stix, supra*, the court found that the trust instrument specifically provided that the trustees could resign by written notice. We consider the portion of the opinion upon which petitioner relies for support of his proposition to be merely *obiter dictum* to the holding of the court. It does not provide a proper basis for petitioner's proposed statement of the law much less the basis for an exception to the established law of Illinois.

In *Aldridge, et al.* v. *Breisch, supra*, the Supreme Court of Mississippi affirmed a decision of a lower court denying a motion to set aside a conveyance of property by a successor-trustee. Prior to the conveyance by the successor-trustee, the original trustee of a testamentary trust had filed a petition with the court responsible for the administration of the estate seeking a discharge as trustee and executor. In his petition, the original trustee noted that the will imposing the trust provided for a successor-trustee in the event of his death or refusal or inability to act as trustee, and that the individual named as successor had accepted the trust in his place. He also submitted a statement which represented the final account of his trusteeship and his executorship. Attached to the petition was a paper signed by the successor-trustee signifying her acceptance of the trusteeship in place of the original trustee and stating that, pursuant to her acceptance of the trusteeship, she had taken personal charge of the estate.

The decree of the court accepted the original trustee's resignation as executor but made no mention of his submitted resignation as trustee. The decree did, however, accept the statement submitted as the final account for both the executorship and trusteeship.

Subsequent to the issuance of the decree, the successor-trustee conveyed as trustee property of the estate to Breisch. An action was later brought in a county Chancery Court of Mississippi seeking to set aside the conveyance. The Chancery Court dismissed the action and the dismissal was appealed to the Supreme Court of Mississippi.

---

[5] See Restatement, Trusts, sec. 106 (2d ed. 1959) for an explicit statement of the basic rules in this area.

In the Supreme Court of Mississippi, the parties seeking to set aside the conveyance argued that since the resignation of the original trustee had not been accepted by the court administering the estate, the original trustee had remained as trustee and the conveyance by the successor-trustee was therefore void. The Supreme Court rejected this position and affirmed the decision of the county Chancery Court denying the motion to set aside the conveyance.

The foundation of the decision of the Supreme Court of Mississippi was the holding that the rule that a trustee cannot be discharged from his duties except by order of a proper court was applicable only where the trust instrument made no provision for successor-trustees. On this basis, the court found that since successor-trustees were provided for, the resignation of the trustee was effective without court consent, and the successor-trustee was legally the trustee at the time of the conveyance.

We regard the decision of the Supreme Court of Mississippi to be contrary to the rule in Illinois. Illinois law and the weight of authority are contrary to the decision in *Aldridge. French* v. *Northern Trust Co.*, 98 Ill. App. 410 (1901), affd. 197 Ill. 30, 64 N.E. 105 (1902). See also *Donaldson* v. *Madison Borough*, 88 N.J. Super. 574, 213 A. 2d 33 (1965) ; *In re Jackson's Will*, 291 S.W. 2d 214 (Mo. App. 1956) ; and *In re Wacht's Will*, 285 App. Div. 402, 137 N.Y.S. 2d 876 (1955).

Each trust instrument pertinent to this case specifically provides that decedent is to be the "sole trustee as long as he shall live and remain competent to act as such trustee." It is evident from this language and the absence of any provision for resignation of the primary trustee (decedent) that decedent clearly intended that his trusteeship of each of the trusts in question should terminate only in the event of his death or incompetency and that in all other circumstances he should continue as trustee.

In each of the trust instruments in question, the right of the successor-trustees to resign is implicit. A provision in each instrument states in pertinent part that :

Should any of said Successor Trustees die, *resign*, become incapacitated or refuse to act as such, then, and not until then, the right to designate a Successor Trustee * * * shall vest in ROBERT REA WARE, Trustee, during his lifetime * * *. [Emphasis supplied.]

On this basis, it is apparent that the absence of any provision or hint in each of the trust instruments that decedent, as primary trustee, could resign cannot be attributed to carelessness or oversight. We should not and will not imply a right of resignation for decedent without a clear indication of such an intention on his part. Such an indication is absent in this case.

Petitioner argues that unless we accept the provisions empowering decedent to appoint successor-trustees as indicative of an intention

on the part of decedent to reserve to himself the right to resign voluntarily as a trustee, we must accept the ridiculous conclusion that the decedent reserved to himself in the trust instrument a contingent power to appoint successor-trustees only in the event of his incompetency or death. We disagree with this argument.

In the first instance, one or both of the successor-trustees named in the instrument could have advised decedent that they would not accept the trusteeship when it ultimately devolved upon them, become incompetent while decedent was still alive, or predeceased the decedent. In each of these circumstances, decedent's power to name successor successor-trustees would become operative and crucial during his competency and lifetime, despite his inability to resign his trusteeship without the permission of a proper court.

Secondly, at any time decedent could have applied to a proper court for permission to resign his trusteeship. If he had done so, and had his application been accepted, his resignation would have been complete. He would have then been in a position to appoint successor successor-trustees (if the named successor-trustees resigned, died, or refused to serve) where he was not dead or incompetent.

Decedent could not have resigned his trusteeship in each of the trusts in question pursuant to the consent of all the beneficiaries. At the time decedent executed the 1940 and 1943 documents purporting to resign his trusteeship of the various trusts in question herein, the primary beneficiaries of two of the trusts were minors and therefore incapable of giving their consent to decedent's attempted resignation. In addition, under the provisions of each of the trusts, there were contingent and unascertained beneficiaries which made consent of all the beneficiaries impossible. See *Williams* v. *Hund, supra.* (See also *Altemeier* v. *Harris, supra,* for a statement of this rule by an Illinois court in the context of a termination of a trust.)

Petitioner, citing *West* v. *Berney*, 1 Russ. & M. 431, 39 Eng. Rep. 167 (1819), argues that a legal distinction exists between situations where the trustee is also the grantor of the trust and situations where he is not. Petitioner insists that in the former situation the trustee should be viewed as having reserved his powers as trustee from the grant so that they must be considered as never having passed from him. Petitioner then concludes that, having so retained those rights and privileges, the grantor-trustee can surrender them at will. Again, we must disagree with the petitioner.

The primary tax reason for creating a trust is that the individual creating the trust seeks to exclude from his gross estate the value of the property transferred to the trust. The rationale for this exclusion is that the grantor of the trust has given up ownership to the property transferred.

The grantor may install himself as trustee, but the value of the property in the trust will not be brought into his gross estate at his death if he does not possess as trustee such powers as would fall within the scope of the various estate tax provisions requiring inclusion of the value of the trust property in his gross estate. See, e.g., secs. 2036–2038. The exclusion is allowed because the capacity of trustee is separate and distinct from the capacity of settlor, and because the grantor-trustee as trustee occupies the same relationship to the trust corpus as would any other individual named as trustee.

The grantor of a trust does not reserve his powers as trustee from the original grant. Instead, when he transfers property in trust, the grantor transfers legal and equitable title and any beneficial interest in the property to the trust. If he establishes himself as trustee in the trust instrument, he enters into that fiduciary capacity not as grantor but as trustee with all the duties and obligations attaching to that position.

The case of *West* v. *Berney, supra*, relied upon by petitioner as support for his position here, is not supportive of petitioner's argument.[6] In *West*, the court decided that a grantor can release reserved power of appointment. The decision was based on the court's conclusion that the grantor was not a trustee.

In the case before us, the power to distribute or accumulate income was an element of the trusteeship and not a personal power of the decedent retained by him at the time of the transfer of the property to the trust. This conclusion is based on two factors:

(1) The power to distribute or accumulate income was given to the trustee as indicated by the language in the instrument that "The balance or remainder of said income shall, in the sole discretion of the Trustee herein, be distributed from time to time * * * or accumulated"; and

(2) The same right was given to successor-trustees to be exercised by them during any period of incompetency of the decedent.

We also reject petitioner's view that decedent, however powerless to resign completely, somehow, through his purported resignations of 1940 and 1943, modified the trust so as to terminate his power to accumulate or distribute the income of the trusts.

A trust instrument can be modified only if a power of modification is included in the trust instrument, and the grantor may not modify the trust unless he has reserved that power to himself in the instrument. This proposition is implicit in the decisions of the Supreme Court of Illinois in the cases of *Parish* v. *Parish*, 29 Ill. 2d 141, 193 N.E. 2d 761 (1963) ; and *Chicago Title & Trust Co.* v. *Shellaberger*, 399 Ill.

[6] *West v. Berney* was decided in 1819. Illinois has adopted the common law of England as it existed prior to Mar. 23, 1607. Ill. Ann. Stat., ch. 28, sec. 1 (Smith-Hurd 1969). Therefore, the case cited is not part of the Illinois law.

320, 77 N.E. 2d 675 (1948). See generally, *Commissioner* v. *Guitar Trust Estate*, 72 F. 2d 544 (C.A. 5, 1934) ; *In re Guaranty Trust Co. of New York*, 74 N.Y.S. 2d 559 (1947) ; *O'Brien Admr.* v. *Holden, et al.*, 104 Vt. 338, 160 Atl. 192 (1932) ; and *Fish* v. *Prior*, 16 R.I. 566, 18 Atl. 162 (1889). See also Bogert, Trusts and Trustees, sec. 992 (2d ed. 1962), for a general statement of this rule.

Petitioner also contends that decedent effectively released his power to accumulate or distribute income by compliance with the Illinois Termination of Powers Act [7] in that decedent, on May 14, 1943, exe-

---

[7] This legislation consists of secs. 177–182, Ill. Ann. Stat., ch. 30 (Smith-Hurd 1969). The Act provides in part :

TERMINATION OF POWERS

Sec. 177. Definitions.

When used in this Act unless the context otherwise requires :

(a) "Power" includes any power of appointment, any power to invade property, any power to alter, amend or revoke any instrument under which an estate or trust is held or created or to terminate any right or interest thereunder, and any power remaining where one or more partial releases have heretofore or hereafter been made with respect to a power, whether heretofore or hereafter created or reserved, whether vested, contingent or conditional, and whether classified in law or known as a power in gross, a power appendant, a power appurtenant, a collateral power, a general, special or limited power, an exclusive or non-exclusive power, or otherwise, and irrespective of when, in what manner, or in whose favor, it may be exercised.

(b) "Donee" means any person whether resident or non-resident of this State who, either alone or with another has a power.

(c) "Objects" when used in connection with a power means the persons in whose favor the power may be exercised.

(d) "Property" when used in connection with a power means any and all property, whether real or personal, any and all interest in property, and any and all income from property, which is subject to the power, and includes any part of the property, any part of the interest in property, and any part of the income from property.

(e) "Release" means renunciation, relinquishment, surrender, refusal to accept, extinquishment, and any other form of release.

Historical Note

Section 7 of Act of 1943 declared an emergency and provided that the Act should take effect upon its passage.

Title of Act :

An Act concerning termination of powers. Approved May 25, 1943. Laws 1943, vol. 1 p. 6.

Sec. 178. Right to release

The donee of a power may :

(a) At any time completely release his power.

(b) At any time or times release his powers : (1) As to any property which is subject thereto ; (2) As to any one or more of the objects thereof ; or (3) So as to limit in any other respect the extent to which it may be exercised.

Sec. 179. Manner of effecting release

A release of a power whether complete or partial is effective when the donee thereof signs an instrument in writing evidencing an intent to make the release and delivers, or causes to be delivered, the instrument, either :

(a) To an adult person who might take any of the property which is subject to the power in the event of its non-exercise ;

(b) To any Trustee or any Co-Trustee of the property which is subject to the power ; or

(c) To the Recorder of Deeds of the County in which any of the property is located or in which the donee resides, and in such case the same shall be recorded by the Recorder.

Sec. 180. Release heretofore made

A release of a power executed prior to the effective date of this Act has the same effect as if this Act had been in effect at the time the release was executed and delivered.

Sec. 181. Right of release not exclusive

The rights and means provided for in this Act for the release of a power are not exclusive, but are in addition to all other rights and means of a donee to release a power in whole or in part.

cuted a series of instruments, relating to each of the trusts in question, which confirmed the instruments he had executed on April 12, 1940, and May 1, 1940, wherein he had purported to resign as trustee.

Respondent argues that the provisions of the Termination of Powers Act are referable solely to the expansion by Congress in the Revenue Act of 1942 of section 811(f) of the Internal Revenue Code of 1939, which in turn related entirely to powers of appointment. On this basis, respondent concludes that since Illinois law recognizes a clear distinction between powers and trusts,[8] the Termination of Powers Act is inapplicable to the termination of the rights, duties, and obligations of a trustee.

We find that the Termination of Powers Act did not authorize the decedent to resign as trustee or to modify the terms of the trust at will.

The Revenue Act of 1942 provided for substantial revisions of section 811(f) of the Internal Revenue Code of 1939, the predecessor of the present section 2041, under which property subject to certain powers of appointment must be included in the gross estate of the donee of the power. The Act did nothing to change section 811(c) and (d) of the Internal Revenue Code of 1939, the predecessors of present sections 2036 and 2038. The revisions of section 811(f) substantially extended the scope of that provision.

The effective release of many of the powers of appointment brought within the scope of the estate tax by the Revenue Act of 1942 was doubtful under common law concepts, and numerous States passed legislation to aid donees of such powers to release them.[9]

In this context, the Illinois Legislature enacted the Termination of Powers Act. Section 7 of this Act declared an emergency situation[10]

---

[8] See e.g., *In re Estate of Breault,* 29 Ill. 2d 165, 193 N.E. 2d 824 (1963) ; *Seymour* v. *Heubaum,* 211 N.E. 2d 897 (Ill. App. 1965) ; and *Kane* v. *Schofield,* 332 Ill. App. 505, 76 N.E. 2d 216 (1947). The trustee takes title to the property transferred in trust. Title or rights of property transferred by him in his capacity as trustee are viewed as having been derived from him as trustee and not from the donor. A trustee's discretion may be broadly defined, but it is not unlimited. A trustee is always subject to equity jurisdiction and must always act in furtherance of the best interests of the beneficiaries and to protect the trust property.

On the other hand, the donee of a power of appointment does not acquire title to the property subject to the power. He acts entirely as the alter ego of the donor of the power, and any title or rights transferred by him are considered as having been acquired by the appointee of the power from the donor rather than the possessor of the power. Furthermore, the holder of a power of appointment is not subject to the jurisdiction of a court of equity.

[9] See 1970–1 C.C.H. Federal Estate and Gift Tax Reporter, par. 1610.07, fn. 1 (1970), for a list of provisions enacted by 31 States for this purpose.

[10] Sec. 7. (Emergency Clause.) WHEREAS, laws of the United States recently enacted impose additional taxes upon donees of powers of their estate unless the powers are released prior to July 1, 1943 ; and,

WHEREAS, the right of many persons to release powers prior to the effective date of this act :

Now, therefore, an emergency is declared to exist and this Act shall take effect upon its passage. (See Ill. Laws 1943, vol. I, p. 8.)

with the consequence that the normal delay in the effective date of this legislation was waived, and the Act became immediately effective.[11]

While the Termination of Powers Act does define broadly the types of "powers" covered by the Act, there is no reference in this Act to functions exercisable only in a fiduciary capacity or functions representing the duties and obligations of a trustee. In view of the clear distinction between powers and trust established by Illinois law (see fn. 8), we believe that if the Illinois legislation had intended to change long-standing rules of law so as to permit a trustee to unilaterally resign at will or to modify the terms of the trust by terminating specific duties or powers, it would have specifically so indicated.

This view is reinforced by decisions of the Illinois courts subsequent to the enactment of the Termination of Powers Act. Implicit in the decisions of the Illinois Supreme Court in *Parish* v. *Parish, supra*, and *Chicago Title & Trust Co.* v. *Shellaberger, supra*, decided in 1963 and 1948, respectively, was the view that a trust was subject to modification only to the extent provided in the trust instrument and that the grantor of a trust may modify it only if he has reserved that power to himself in the instrument. In *Sauvage* v. *Gallaway, supra*, decided in 1946, an Illinois appellate court held that a trustee could not resign in part his duties and obligations.

In any event, decedent did not attempt to specifically divest himself of his power to accumulate or distribute income of the trust in any of notarized documents which he executed, and his action must stand or fall as a resignation in toto of his trusteeship. Since we have already determined that decedent failed in this regard, we need not undertake any further consideration of petitioner's argument with respect to the Illinois Termination of Powers Act.

Finally, petitioner argues that the power to accumulate or distribute income is a special collateral power, releasable as a matter of common law, and that decedent successfully released this power by the instruments he executed on May 14, 1943. Again, we must disagree with the petitioner.

Powers may be categorized as general or special powers. A power is held to be general when the donee has the right to appoint whomever he desires, and special when it can be exercised only in favor of specified persons. *Frank* v. *Frank*, 305 Ill. 181, 137 N.E. 151 (1922).

In the case before us, each of the trust instruments provides for the exercise of the power to accumulate or distribute income in favor of a specified individual. Hence, this power is a special power.

Powers may be further categorized as powers in trust, powers appendant, powers in gross, and collateral powers. A power in trust

---

[11] Illinois Constitution, art. IV, sec. 13.

is one which the creator of the power intends to be exercised. It involves a power plus a duty to discharge or exercise the power. See, e.g., *Brown* v. *Higgs*, 8 Ves. Jr. 561, 32 Eng. Rep. 473 (1803). If the creator of the power makes its exercise by the donee optional, it is not a power in trust. See, e.g., *Brook* v. *Brook*, 3 S. & G. 280, 65 Eng. Rep. 659 (1856), and *In re Combe*, L.R. [1925] Ch. 210.

A power appendant is a power existing where the donee of the power has an estate in the items of property subject to the power, where the power is to take effect wholly or in part of that estate, and where the estate created by the exercise of the power affects the interest and estate of the donee of the power. See, e.g., *Baker* v. *Wilmert*, 288 Ill. 434, 123 N.E. 627 (1919).

In this case, there is no power appendant because decedent had no estate in the trust property which the power he retained could affect.

Powers in gross are powers which are vested in an individual having an interest in the property subject to the power but which allow the donee of the power to create only estates as will not affect the interest originally limited to him. See, e.g., *Baker* v. *Wilmert, supra*.

In the instant case, the power retained by decedent would not generally be classified as a power in gross because decedent retained no interest in the property. Gray, however, views a power, such as the one before us, reserved upon the creation of a fee as a type of power in gross and acknowledges that such a power may be released by the donee of the power.[12] This view is supported by numerous English cases; see, e.g., *Albany's Case*, 1 Coke 110a, 76 Eng. Rep. 250 (1586) ; *Bickley* v. *Guest*, 1 Russ. & M. 440, 39 Eng. Rep. 170 (1831) ; *Re Radcliffe*, L. R. [1892] 1 Ch. 227. Furthermore, the Illinois Supreme Court has stated that a power in gross not coupled with a trust may be released. *Baker* v. *Wilmert, supra*.

Finally, a collateral power is a power given to an individual without any interest in the property subject to the power. In other words the donee of the power has no interest in the property subject to the power except the reserved power itself. Collateral powers, except those exercisable in favor of the donee himself could not be released. *Baker* v. *Wilmert, supra*. There is, however, an exception to this rule where the donee of the power is also the donor. *West* v. *Berney, supra*. In addition, Simes insists that all powers are terminable except powers in trust. Simes, "Powers in Trust and the Termination of Powers by the Donee," 37 Yale L.J. 63 (1927).

Petitioner concludes that decedent had a special power in gross, as defined by Gray, or a special collateral power in that the power was exercisable only in favor of certain designated beneficiaries and not in favor of himself, and the decedent, as donee of the power, held no

---

[12] Gray, "Release and Discharge of Powers," 24 Harv. L. Rev. 511, 516–521 (1911).

interest in the property subject to the power other than the power itself.

Petitioner's conclusion is based on the argument that the power to accumulate or distribute income was not a power in trust because it was exercisable in the sole discretion of the decedent and lacked the characteristic of imperativeness indigenous to a power in trust.

Initially, it must be said that petitioner has again blurred the distinction between a trustee and a holder of a power of appointment. We have previously noted the clear distinction between these two capacities established by Illinois law, and determined that in the instant cases, the power to distribute or accumulate income was an element of the trusteeship and not a personal power of the decedent retained by him at the time of the transfer of the property to the trust. Therefore, the classification of the power involved here is actually unnecessary for purposes of our decision here.

In this case, decedent had the discretion to decide whether to accumulate or to distribute the income of the trust. Even assuming that decedent's right to accumulate or distribute income is viewed as a power of appointment, he was obligated to exercise his discretion in that he had to decide whether to accumulate or distribute the income, and he could not escape from his duty to use reasonable care in the exercise of his discretion. Consequently, the power, if it is assumed to exist, was a power in trust and could not be released by the decedent.

Finally, again assuming that decedent's right to accumulate or distribute income is a power of appointment, decedent, as stated previously, never specifically attempted to release that power in any of the notarized documents which he executed. In the documents of April 12, 1940, he purported only to resign as trustee as to each of the five trusts and explicitly purported to release his right to appoint successor-trustees. In these circumstances, the absence of a specific provision providing for a renunciation of his power to accumulate or distribute income in any of the other notarized documents cannot be cast aside as mere oversight. Consequently, the purported release of the power over income must be viewed as a part of decedent's attempt to resign in toto as trustee, and it must be viewed as having failed with his failure to successfully resign.

For these reasons, we hold for the respondent.

*Decision will be entered under Rule 50.*